*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TAMMY S. WELLS, | ) | |
| | ) | Supreme Court No. S-15590 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-03-00176 CI |
| v. | ) | |
| | ) | O P I N I O N |
| PRIMO J. BARILE, | ) | |
| | ) | No. 7060 - October 16, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Tammy Wells, pro se, Palmer, Appellant. Primo Barile, pro se, Palmer, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

Tammy Wells appeals the superior court's grant of a motion to modify child custody filed by her former husband Primo Barile. Tammy also challenges the court's child support order, its order that she reimburse Primo for half their child's Permanent Fund Dividends (PFDs), and a writ of assistance the court issued for the custody order's enforcement. She also alleges that several of the superior court's rulings show judicial bias and a failure to give her the leniency appropriate to her status as a pro se litigant.

We conclude that the superior court abused its discretion when it ordered Tammy to reimburse Primo for the PFDs without taking into account, as an offset, the amounts that Primo may have owed Tammy for medical care. We reverse the judgment on this issue and remand for further proceedings. On all other issues we find no error and affirm.

## II.    FACTS AND PROCEEDINGS

Tammy Wells and Primo Barile married in 1995 and divorced in 2004. They have a son, born in 1997. Tammy married Lance Wells after her divorce from Primo and has two children with Lance.

Tammy and Primo shared physical custody of their son on a "50/50 basis" pursuant to an order entered in January 2009.[1] Neither parent was required to pay child support to the other. The 2009 order required Tammy to apply for their son's PFDs but divide them equally with Primo. The order also required the parents to keep their son on their health insurance as long as it was available at reasonable cost through their employers, and to share the cost of any reasonable health care expenses not covered by insurance, up to a maximum of $5,000 annually.

### A.    Lance's Motion To Modify Custody

Tammy and Lance divorced in 2013. The permanent custody order entered in their divorce provided for joint legal and shared physical custody of their two children. Lance moved to modify custody in early 2014, seeking primary physical and sole legal custody. After holding an interim hearing in February, Superior Court Judge Kari Kristiansen found a substantial change in circumstances and granted Lance's motion. As relevant here, Judge Kristiansen found "more than ample evidence" that Tammy

---

[1]    The 2009 custody order followed this court's remand for an evidentiary hearing on Tammy's motion to modify custody. *See Barile v. Barile*, 179 P.3d 944, 947 (Alaska 2008).

"present[ed] a danger to the minor children based on threats of self-harm and substance abuse, and leaving the children unattended." She ordered that Tammy undergo a complete psychological evaluation and have only supervised visitation with the children.

## B. Primo's Motion To Modify Custody

In November 2013 Primo had moved to modify the 2009 custody order from his and Tammy's divorce, arguing that Tammy's recent divorce from Lance, her abandonment of their son while she traveled to Costa Rica on a humanitarian mission, and their son's worsening grades at school constituted a substantial change in circumstances. Primo sought sole legal and primary physical custody, with Tammy's visitation limited to "[e]very other weekend until [she] has a stable emotional, financial and home life." Primo did not ask for child support, but he did ask that Tammy reimburse him for half of their son's yearly PFDs as required by the 2009 order.

Tammy opposed Primo's motion. She contended that his allegations of a substantial change in circumstances relied largely on inadmissible hearsay. She denied abandoning their son for her trip to Costa Rica, asserting that she left him temporarily in Lance's care, with Primo's knowledge, so that he could continue attending the same high school as his half-brother. She also asserted that their son's difficulties with school were unrelated to the custody situation. She contended that Primo had agreed to pay for their son's braces, and she denied owing Primo his share of the child's PFDs because she had used it to pay for the braces — an expense the parties were required to split evenly under the terms of the 2009 order.

In his reply Primo asked the superior court to consider the findings made on Tammy's emotional health in the proceedings involving her divorce from Lance.

In March 2014 Superior Court Judge Vanessa White held an evidentiary hearing on Primo's motion to modify custody. Both Primo and Tammy represented themselves, and they both presented witnesses. Of relevance here, Primo called Lance,

who testified about Judge Kristiansen's findings on his motion to modify custody in the separate divorce proceeding. Judge White questioned Primo and Tammy's son on the record but outside the presence of his parents, where he testified that he would prefer to live with his mother.

Following the hearing, the superior court made extensive oral findings. It granted Primo's motion to modify custody, awarding him sole legal and primary physical custody of the parties' son, with Tammy having visitation every other weekend. It found a substantial change in circumstances based on the child's poor academic performance while in Tammy's care, Tammy's decision to leave for Costa Rica at a time when her son was on academic probation, and Tammy's emotionalism and threats of self-harm.

In making its findings on Tammy's emotional state, the superior court cited Judge Kristiansen's interim order in Tammy and Lance's divorce, stating that because it was "fairly contemporaneous in time" she was "very confident in finding . . . that Lance Wells [had] testified consistently in both proceedings," and she found Lance's testimony to be "extremely credible." The superior court also found Primo's testimony credible, but it did not credit Tammy's testimony because she was "all about denial and not about accepting any responsibility." The court found the child's testimony credible but found that he was "in a slightly parentified relationship with his mom," and also that his preference for his mother was motivated partly by the difference in discipline between the two households. The superior court declined to give collateral estoppel effect to Judge Kristiansen's findings on Tammy's emotional state, but it concluded, as Judge Kristiansen had, that Tammy "presents a risk of emotional harm to the children and demonstrates a significant degree of instability."

The superior court also issued a tentative child support order pending an opportunity for the parties to weigh in on whether the court should impute income to Tammy. As for Tammy's use of the PFDs, the superior court ordered her to submit

documentation to support her claim that she had used Primo's half of the funds to help pay for her son's braces.

Tammy filed a "notice of compliance" along with documents showing her payment of the orthodontic bills. She noted that the braces cost $5,600 and that half of their son's PFDs for the years 2010 to 2013 was $2,116.50, leaving $683.50 that Primo still owed for his half of the braces' cost. In response Primo argued that orthodontic work was not medically necessary, that he had never agreed to help pay for it, and that the 2009 order gave Tammy no discretion as to whether she should turn over half the PFDs to him.

## C.    The Superior Court's Writ Of Assistance And Tammy's Motion For Reconsideration

In April 2014 Primo moved that Tammy's visitation be supervised and asked for a writ of assistance to enforce the custody order. He alleged that Tammy was encouraging their son to run away during Primo's custody time and was supporting his delinquency from school. The superior court issued the requested writ, which provided that "[a]ny peace officer to whom this Writ is delivered is authorized to assist" Primo in enforcing the custody order. The writ stated that Tammy had "refused and/or failed to obey [the custody order] and is harboring and supporting a child that is listed and regarded as a 'runaway' in the eyes of the law."

Tammy moved for reconsideration of the superior court's custody order and challenged the writ of assistance based on false premises. The court denied the motion for reconsideration but reserved for hearing Tammy's challenge to the writ. It scheduled a show-cause hearing on several issues: Tammy's failure to submit the necessary income information for the calculation of her child support obligation, her failure to pay half of the PFDs to Primo, and her challenge to the writ of assistance.

**D.    The Show-Cause Hearing**

The show-cause hearing was held in June 2014.  After hearing from both parties, the court ordered that Tammy submit her 2013 tax return by the end of the week or be found in contempt; that Tammy reimburse Primo for half of their son's PFDs for the years 2010 through 2013; and that the writ of assistance required no modification or clarification.  In July the superior court signed a judgment against Tammy in the amount of $2,407.44, reflecting half of the PFDs for four years plus prejudgment interest on that amount.

Tammy raises 16 issues on appeal, but we group her arguments as follows: that the superior court (1) erred by granting Primo's motion to modify custody; (2) erred by ordering Tammy to pay child support when Primo had not requested it; (3) erred by ordering Tammy to reimburse Primo for half of their son's PFDs; (4) erred by issuing the writ of assistance; (5) displayed judicial bias; and (6) failed to apply the less stringent procedural standards to which pro se litigants are entitled.  Primo's single-page brief argues simply that this custody case is now moot because the parties' son turned 18 in March 2015, while the appeal was in the briefing stage.

## III.    STANDARD OF REVIEW

We review the superior court's custody determination for abuse of discretion.[2]  "An abuse of discretion occurs when the superior court considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[3]  "We apply de novo review to child support issues involving a question of law such as

---

[2]    *Graham R. v. Jane S.*, 334 P.3d 688, 692 (Alaska 2014).

[3]    *Martin v. Martin*, 303 P.3d 421, 424 (Alaska 2013) (quoting *Heather W. v. Rudy R.*, 274 P.3d 478, 481 (Alaska 2012)) (internal quotation marks omitted).

interpreting a civil rule, interpreting the terms of a child support order, and determining the correct method for calculating child support."[4] But "[w]here no question of law is involved, superior courts have broad discretion in making child support determinations, and we review the superior court's decision for an abuse of discretion."[5]

"We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[6] We review other procedural decisions for abuse of discretion.[7]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Granting Primo's Motion To Modify Custody.

Tammy contends that the superior court erred when it granted Primo's motion to modify custody and awarded him sole legal and primary physical custody of their son. The boy reached the age of majority while this appeal was pending. Tammy's challenge to the custody order would therefore be moot[8] if it were not for its relevance

---

[4]  *Millette v. Millette*, 240 P.3d 1217, 1219 (Alaska 2010) (footnotes omitted).

[5]  *Id.*

[6]  *Sagers v. Sackinger*, 318 P.3d 860, 863 (Alaska 2014) (citing *Griswold v. Homer City Council*, 310 P.3d 938, 941 n.6 (Alaska 2013)).

[7]  *Norris v. Norris*, 345 P.3d 924, 928 (Alaska 2015).

[8]  *See Hermosillo v. Hermosillo*, 962 P.2d 891, 892 n.1 (Alaska 1998) (declining to address father's custody or visitation arguments "because they became moot when [the child] turned 18 years of age"). Tammy filed her appeal in July 2014, and her son turned 18 in March of this year. *See* AS 25.20.010 ("A person is considered to have arrived at majority at the age of 18, and thereafter has control of the person's own actions and business . . . except as otherwise provided by statute.").

to the amount of past child support, which is also challenged on appeal.[9] We therefore review the custody order and conclude that it should be affirmed.

A court "may modify a custody award if it determines that (1) a change in circumstances requires the modification of the award and (2) the modification is in the best interests of the child."[10] Tammy disputes that either requirement was met. She argues first that the superior court clearly erred in finding a substantial change in circumstances based on her emotional instability, presenting a risk of emotional harm to her son. She contends that the superior court, in making this finding, improperly relied on Judge Kristiansen's findings in the interim custody hearing involving Tammy's two children with Lance.

Judge White noted Judge Kristiansen's findings in her oral decision, but she expressly declined to give them any collateral estoppel effect[11] on grounds that they were from an interim hearing — and thus "no[t] based on complete information" — and that only Lance had been represented by counsel, meaning that "there was no [parity] in terms of the parties['] ability to present evidence." Judge White's thorough review of the evidence in her oral decision makes it clear that she did not rely on Judge Kristiansen's findings as a substitute for her own, as Tammy implies: Judge White made

---

**9** *See Turinsky v. Long*, 910 P.2d 590, 594 n.9 (Alaska 1996) (addressing visitation order because of its potential effect on child support, but finding visitation issues otherwise moot because child had reached age of majority).

**10** *Graham R. v. Jane S.*, 334 P.3d 688, 694 (Alaska 2014) (quoting AS 25.20.110(a)) (internal quotation marks omitted).

**11** *See Morris v. Horn*, 219 P.3d 198, 208 (Alaska 2009) (explaining that "[t]he doctrine of issue preclusion, or collateral estoppel," permits that " 'an issue of fact which is actually litigated in a former action may, under certain circumstances, be regarded as conclusive in a subsequent case' " (quoting *F.T. v. State*, 862 P.2d 857, 864 n.13 (Alaska 1993))).

her own findings from the record before her while noting that Judge Kristiansen had some of the same concerns. We see no error.

Tammy next contends that the superior court erred in its determination of her son's best interests because it failed to give sufficient weight to his preference that Tammy have physical custody.[12] But a court does not abuse its discretion simply because it orders a custody arrangement that differs from a child's stated preference. "The superior court has discretion to determine whether a child is capable of forming a trustworthy preference,"[13] and it is within its discretion to conclude that the child's stated preference is unreliable because it is based on a reluctance to hurt either parent[14] or because it is otherwise "immature or improperly motivated."[15]

Here, the superior court stated that it was "factoring in [the child's] preference" but was unwilling to "give it a lot of weight." It found that the boy's preference for his mother was influenced by his belief that separation would be harder on her than on his father and also that he would have more freedom with his mother because Primo imposed more discipline, both academically and socially. The record supports these findings. The court did not clearly err in making them, nor did it abuse

---

[12]    *See* AS 25.24.150(c) (providing that in determining the best interests of the child for custody purposes, a court is to consider "[a] child's preference [regarding custody] if the child is of sufficient age and capacity to form a preference").

[13]    *Thomas v. Thomas*, 171 P.3d 98, 103 (Alaska 2007).

[14]    *See Rooney v. Rooney*, 914 P.2d 212, 218 (Alaska 1996) ("[W]here a stated preference [of a child] results entirely from the child's desire to satisfy his parent's wishes — or because he does not wish to offend either of them — such a preference does not fall within the statutory ambit.").

[15]    *Thomas*, 171 P.3d at 103.

its discretion when, after weighing all the relevant factors, it ordered a custody arrangement that was contrary to the child's stated preference.

### B. The Superior Court Did Not Abuse Its Discretion In Ordering Tammy To Pay Child Support.

Tammy contends that the superior court abused its discretion when it ordered her to pay child support even though Primo did not request it in his motion to modify custody. When the superior court granted Primo's motion, the arrangement changed from shared physical custody on a "50/50 basis" — an arrangement under which neither parent paid child support to the other — to one parent having primary physical custody. The superior court entered a tentative child support order reflecting this change and ordered Tammy to submit her Child Support Guidelines affidavit and 2013 income tax return so the court could calculate child support. This was plainly the proper course; a significant modification of the physical custody schedule is likely to require a new child support determination, regardless of whether a parent requests it.[16] Alaska Civil Rule 90.3(a) sets out the framework for determining a child support award when "one parent is awarded primary physical custody," as happened here when the court granted Primo's motion.

---

[16]     *See Swaney v. Granger*, 297 P.3d 132, 137 n.15 (Alaska 2013) (even though mother's "request to modify custody was silent as to child support," court observed "that under Rule 90.3(a) the change of a child's primary physical custodian from one parent to the other ordinarily will require modification of an existing support order").

Tammy raises a number of constitutional challenges to the Child Support Guidelines. They were not timely raised below, and we consider them waived.[17] Finding no error, we affirm the superior court's child support order.

C.     **It Was An Abuse Of Discretion To Find The Orthodontics Expenses Ineligible For Reimbursement Based On Factors Other Than The Terms Of The 2009 Custody Order.**

Tammy argues that the superior court abused its discretion in ordering her to reimburse Primo for half the PFDs she received on their son's behalf between 2010 and 2013. She contends that she had a right to use Primo's share of the PFDs because Primo failed to pay half of their son's uninsured orthodontic expenses pursuant to the 2009 child support order, and she simply offset Primo's half of the PFDs against what he owed her. We agree that this issue requires further consideration on remand.

The superior court heard from both parties on this subject at the June 2014 show-cause hearing. Primo did not dispute that the child's braces cost $5,600, though he claimed he did not know whether they served a legitimate medical purpose. The court

---

[17]     Because Tammy raises them for the first time on appeal, she has waived her arguments that the Child Support Guidelines violate due process and the right to privacy and constitute an unconstitutional taking. *See Beach v. Handforth-Kome*, 314 P.3d 53, 57 n.10 (Alaska 2013) ("By raising this argument for the first time on appeal, Beach has waived it."). Tammy did raise other legal challenges to the child support award in the superior court in a motion for reconsideration: that the Guidelines fail to comply with federal regulations, violate the Supremacy Clause of the U.S. Constitution, violate equal protection, and usurp powers delegated to the federal government. The superior court denied reconsideration without specifically addressing these arguments, but it was not required to address them, as arguments raised for the first time on reconsideration are waived. *McCarter v. McCarter*, 303 P.3d 509, 513 (Alaska 2013). We also note that we have rejected similar constitutional challenges to Civil Rule 90.3 in the past. *See, e.g.*, *Lawson v. Lawson*, 108 P.3d 883, 886 (Alaska 2005) (holding that Rule 90.3 does not violate the Fourth Amendment, the Fifth Amendment, or the right to privacy); *Coghill v. Coghill*, 836 P.2d 921, 928-30 (Alaska 1992) (holding that Rule 90.3 does not violate equal protection and due process).

found that the parties had discussed their son's need for braces but that Primo was disinclined to pay for them because of his own financial circumstances. The court faulted both parents for the ensuing impasse: Primo because he failed to follow up with the orthodontist to see whether braces were a necessary expense that he was obliged to share, and Tammy because when Primo refused to share the cost she took "unilateral action" by keeping Primo's half of the PFDs and putting it toward the orthodontic expenses. The superior court ruled that Tammy should have continued to pay Primo his half of the PFDs pursuant to the 2009 order regardless of what she thought he owed her and should have sought assistance from the court if she wanted him to share in the orthodontic expenses. The court also determined that, by getting the braces without Primo's consent, Tammy had acted "at [her] own expense" and was not entitled to reimbursement. It entered judgment in favor of Primo in the amount of $2,407.44 for the unpaid PFDs and prejudgment interest.

We conclude that this was an abuse of discretion. The 2009 custody order required the parties to share equally in their son's PFDs, but it also required that they share equally in "[t]he cost of the child[]'s reasonable health care expenses not covered by insurance" up to $5,000 in a calendar year. The custody order further specified that "[a] party *shall* reimburse the other party . . . within 30 days after receiving the health care bill." The custody order imposed no other conditions on reimbursement. There was no requirement that a parent consent to medical care before having to share in its cost, and no indication that a parent could forfeit the right to reimbursement by proceeding unilaterally to incur an otherwise valid health care expense. The superior court correctly observed that both parties shared fault for the impasse over their son's orthodontic expenses. But its decision that Tammy should not be reimbursed for the cost of the

braces was based on factors other than those imposed by the 2009 order that governed the parties' rights and responsibilities under the circumstances.

The superior court was correct to observe that parties are expected to comply with the court's orders with regard to custody and the sharing of expenses, and we sympathize with the court's apparent frustration with the litigants' inability to resolve this matter themselves. But entering a money judgment in favor of one parent against the other in order to resolve a relatively minor dispute over children's shared expenses should be a last resort, especially in cases like this one where each parent alleges that the other owes money.

We reverse the July 2014 judgment and remand this issue to the superior court so that it can reconsider whether Tammy is entitled to reimbursement under the terms of the 2009 child custody order. The court should make findings with regard to the amount of the reasonably necessary orthodontic expenses and whether that amount is partially or wholly offset by what Tammy owes Primo for his half of the PFDs. We leave it to the superior court's discretion to determine whether the existing factual record is sufficient for these purposes or whether it needs to invite further submissions from the parties before deciding the issue.

D.    **Tammy's Challenge To The Writ Of Assistance Is Moot.**

Tammy challenges the writ of assistance the superior court issued for the enforcement of its custody order, contending that it falsely identified their son as a "runaway" and falsely accused Tammy of encouraging him to leave Primo's lawful custody. But because their son has reached the age of majority, any dispute over the use of the writ to enforce the custody order "has lost its character as a present, live

controversy."[18]  Tammy would be entitled to no relief on this issue even if she were to prevail, and we therefore consider it moot.[19]

**E.  Tammy's Allegations Of Judicial Bias Are Without Merit, And The Superior Court Did Not Abuse Its Discretion In Its Treatment Of Tammy As A Pro Se Litigant.**

Tammy refers to several of the superior court's rulings as "tend[ing] to prove prejudice and bias of the Court."  But these allegations of bias are merely "another iteration of [her] own discontent with the court's substantive rulings" and therefore fail to establish bias.[20]  We also reject Tammy's contention that several of the superior court's rulings "tend[] to demonstrate" its failure to hold her to less stringent standards than if she were a lawyer, as required under *Breck v. Ulmer*.[21]  Tammy refers specifically to the superior court's denial of a motion that asked the court to explain why it rejected Tammy's claims of bias in her motion for reconsideration of the custody order.  But the superior court based its rulings on the lack of merit in Tammy's positions, not on

---

[18]  *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1185 (Alaska 2008) (quoting *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 994 (Alaska 2006)).

[19]  *Peter A.*, 146 P.3d at 994 ("If the party bringing the action would not be entitled to any relief even if it prevails, there is no 'case or controversy' for us to decide.").

[20]  *Ward v. Urling*, 167 P.3d 48, 58 (Alaska 2007).

[21]  745 P.2d 66, 75 (Alaska 1987), *cert. denied*, 485 U.S. 1023 (1988).

procedural defects in Tammy's pleadings that could have been corrected.[22] The court did not violate the rule of *Breck* in making its substantive rulings.

## V.    CONCLUSION

We REVERSE the superior court's order and judgment requiring Tammy to reimburse Primo for their son's PFDs and REMAND for further findings on whether an offset for the orthodontic expenses is appropriate. In all other respects we AFFIRM the judgment of the superior court.

---

[22]    *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) (declining "to extend *Breck* to require judges to warn pro se litigants on aspects of procedure when the pro se litigant has failed to at least file a defective pleading"); *Breck*, 745 P.2d at 75.