NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL M., | ) | |
| | ) | Supreme Court No. S-16121 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-10-02122 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CATHERINE T. | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1598 – October 19, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Michael M., pro se, North Pole, Appellant. Notice of nonparticipation filed by Corinne Vorenkamp, Interior Alaska Center for Non-Violent Living's Legal Services Program, Fairbanks, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

## I. INTRODUCTION

This case arises from a custody dispute that began in 2010. In October 2015 — after trial on a custody modification motion — the superior court issued a final custody order awarding full legal and primary physical custody to the mother. The father appeals, challenging the superior court's custody determination, refusal to allow the child

---

\*      Entered under Alaska Appellate Rule 214.

to testify, failure to modify child support, and order regarding the visitation costs. He also alleges due process violations, challenges the constitutionality of Alaska's custodial interference statute, and argues that he was the subject of judicial bias. For the reasons set forth below, we affirm the superior court in all respects.

## II.   FACTS AND PROCEEDINGS

### A.   Background

Michael M. and Catherine T. were married in Fairbanks in May 2000. The parties have one child, John,[1] born in 2001. Michael and Catherine separated in June 2010 and in July the superior court issued temporary orders providing that the parties would share custody of John.

In June 2011 Catherine filed a motion for an order to show cause and a motion to modify the temporary custody orders. She detailed a series of events in early June culminating in a fire that destroyed the marital home and expressed concern that Michael may have left Alaska with John against court orders. The superior court awarded Catherine sole legal and primary physical custody and authorized her to use law enforcement to return John to her custody if necessary. Michael later was arrested for custodial interference by U.S. Marshals in California after taking John to Texas, Oklahoma, and New Mexico. Michael, on the other hand, has maintained throughout the proceedings that he had merely taken John on vacation.

In November 2011 a child custody investigator filed a report expressing various concerns about Michael. She discussed Michael's unwillingness to facilitate a relationship between Catherine and John; Michael's removal of John out of Alaska, apparently without Catherine's permission and in violation of court orders; and Michael's tendency to disparage Catherine. The investigator had no such concerns about

---

[1]      Pseudonyms or initials are used to protect the family's privacy.

Catherine, dismissing domestic violence allegations Michael had raised as not credible. The custody investigator recommended that Catherine have sole legal and primary physical custody of John, and that Michael have supervised visitation until he completed a psychological evaluation, an assessment from a domestic violence prevention organization, any services recommended in that assessment, and a parenting class.

Trial was held in November 2011 and in July 2012 the superior court issued a divorce decree with written findings of fact and conclusions of law. The court found that Michael had a history of perpetrating domestic violence, citing his violation of a domestic violence restraining order and his probable commission of the crime of custodial interference in June 2011 when he absconded from Alaska with John.[2] Having determined that the AS 25.24.150(g) domestic violence presumption applied,[3] the superior court then determined that Michael had failed to overcome that presumption. Further, the court found that, regardless of the presumption, it was in John's best interests for Catherine to have sole legal and physical custody.

In October Catherine filed a motion requesting that the July 2012 custody order be modified to grant equally shared legal and physical custody, stating that she felt shared custody would be in John's best interests. The superior court denied the motion because Michael had not complied with requirements for overcoming the domestic violence presumption and no substantial change of circumstances had occurred warranting modification.

---

[2]     Michael had not yet been convicted of custodial interference, but he had been indicted; the court found by a preponderance of the evidence that he had committed the crime. In February 2012 Michael pleaded guilty to custodial interference, a class C felony.

[3]     "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence . . . may not be awarded. . . custody of a child." AS 25.24.150(g).

Despite the court's custody modification denial, John resided with Michael in Oregon from December 2012 through June 2013 — an arrangement Catherine apparently agreed to — in violation of court orders restricting Michael to only supervised visits with John. While John was with him, Michael filed a motion for custody modification with the Oregon court. An Oregon judge conferred with the Fairbanks court under the Uniform Child Custody Jurisdiction and Enforcement Act[4] and concluded that Oregon had no jurisdiction over the custody matter.

By May 2014 the custody investigator reported that Michael had completed programs that the court determined met all requirements necessary to move for modification. In June Michael moved to modify custody, requesting primary physical custody during the school year and shared legal custody. Michael argued that it would be in John's best interests to live with him in Oregon, emphasizing John's stated preference to do so. Catherine acknowledged that John had expressed a preference for living in Oregon, but she surmised that the preference was based on his desire to live in a larger town and argued that it was in his best interests to remain with her.

The superior court found that Michael had overcome the domestic violence presumption, and that his move to Oregon constituted a substantial change in circumstances. The court appeared to find that John's advance in age from 10 to 13 warranted consideration of his preference. The court then referred the matter for a new custody investigation.

In May 2015 a new custody investigator filed her report with the court. Although the report reflected some of the concerns present in the 2011 report, the investigator ultimately recommended that John live with Michael during the school year and spend summers with Catherine. The recommendation was largely based on John's

---

[4] Alaska's version of the Act is codified in AS 25.30.300-.910.

own stated preference; the investigator noted that John "has a clear preference that he be able to spend time with in Oregon and to attend school there" and that "he be primarily parented by [Michael]." She commented that, although Michael had "actively and inappropriately groomed [John] in that preference," John's preference was "strong." But the investigator also noted that allowing John to spend so much time in Michael's care came with the "risk . . . that [John's] love and trust in [Catherine] will be eroded by [Michael's] contempt." Like the 2011 investigator, the new investigator observed there was "little indication that [Michael] has protected [John's] relationship with [Catherine] anywhere to the degree that the reciprocal has been true," and Michael "has surreptitiously and actively sought to undermine [John's] relationship with [Catherine] and has entangled [John] in deceptive strategies of distortion without regard to the effect that this would have on [John's] relationship with [Catherine]." The investigator was particularly concerned with Michael's messages directing John on what to include in a letter to the superior court expressing his custody preference.

### B. Custody Modification Trial And Final Custody Determination

A custody modification trial was held in August 2015. At a pretrial conference Michael said he intended to call John as a witness. The superior court responded that it would not allow testimony from John. During the trial Catherine presented evidence of a Facebook message Michael sent telling John precisely what to write in a letter to the court expressing his preference to live with Michael in Oregon. The message instructed John, "You need to put these words in your letter," and included phrases such as "I want to live with my Dad," "Dad makes me feel safe and takes care of me," "Mom spends no time with me," "she yells at me and is not nice to me," and "She hits me, and dad does not." Additionally, the parties each testified to their version of events regarding Michael's decision to take John out of Alaska in 2011. Michael maintained that he had simply taken John on vacation. Catherine contended that Michael

took John without her permission, and that she had to be notified by federal marshals when they found him 40 days later. Finally, Michael also testified that in 2010 Catherine had committed domestic violence against him, for which she had to be removed from the parties' marital home.

In October the superior court issued its final custody findings and order, awarding Catherine sole legal custody and primary physical custody. The order included a lengthy discussion regarding the court's credibility determinations. The court concluded that Michael "is not credible, he is not believable, and . . . he will consistently do what he wants without regard to any order of the court." In support of its credibility finding the court cited various occurrences over the course of the litigation, particularly focusing on Michael's commission of custodial interference in 2011 and his continued refusal to admit that the trip was not a "vacation" as he consistently maintained. The court found that, between Michael and Catherine, it was likely Michael who started the fire that destroyed the marital home in 2011. And the court cited multiple instances of Michael trying to manipulate the court system, including his attempt to use the Oregon court as a means of getting around the Alaska custody orders, his failure to inform the court of his return to the Fairbanks area in 2014 and 2015 as required, and his telephonic participation in a September 2014 domestic violence hearing despite his actual presence in Fairbanks. The court concluded that it "simply does not find Michael credible on any disputed fact, finds that he is manipulative of [John], and finds that he will not comply with either the letter or the spirit of any court order, criminal or civil."

Consequently the court did not adopt the 2015 custody investigator's recommendations, finding that they were "based on facts the court specifically finds to be erroneous." The court specifically rejected the investigator's physical custody recommendation on the ground that John's preference was influenced by "consistent and insistent direction from Michael." The court was especially disturbed by Michael's

Facebook correspondence telling John what to say in a letter to the court expressing his preference to live with his father.

The superior court then conducted an analysis of AS 25.24.150(c)'s best interests factors and concluded that all of the statutory factors favored Catherine.[5] The court found that Michael expressed a desire to meet John's needs but lacked the capability to do so, and that Catherine had demonstrated her ability to meet those needs.[6] With respect to John's stated preference to live with Michael, the court did "not attach weight to" that preference because Michael's "manipulative and controlling interjection" rendered the preference "not credible."[7] The court also found that love and affection existed between John and each of his parents,[8] but that John's interest in a stable

---

[5]     While the court properly applied the best interests factors under AS 25.24.150(c), throughout his brief Michael refers to the shared custody factors under AS 25.20.090. The shared custody factors generally parallel the best interests factors but add several factors specifically tailored to a shared custody determination: the child's education; the optimal time for the child to spend with each parent considering factors such as proximity of the parents and feasibility of travel; and any mediator's findings. *Compare* AS 25.24.150(c), *with* AS 25.20.090. Michael does not argue that the superior court erred by not discussing the remaining shared custody factors. But there is significant overlap between the subject matter of these remaining factors and the best interests factors, and a trial court is "only required to discuss relevant factors in explaining its decision." *West v. West*, 21 P.3d 838, 842 (Alaska 2001). Because the court discussed all relevant factors there is no need to differentiate the shared custody factors Michael discussed on appeal.

[6]     AS 25.24.150(c)(1)-(2) ("[P]hysical, emotional, mental, religious, and social needs of the child; [and] the capability and desire of each parent to meet these needs.").

[7]     AS 25.24.150(c)(3) ("[C]hild's preference if the child is of sufficient age and capacity to form a preference.").

[8]     AS 25.24.150(c)(4) ("[L]ove and affection existing between the child and
(continued...)

environment "clearly favor[s] Catherine" because "[John] has lived . . . with her[] essentially his whole li[f]e."[9] Citing Michael's "palpable antipathy and abhorrence towards Catherine," the court found that Catherine would be better suited to facilitating a close and continuing relationship between John and his father than would Michael between John and his mother.[10] With respect to past domestic violence issues — namely Michael's custodial interference conviction — the court found that, although Michael had overcome the domestic violence presumption under AS 25.25.150(g), his past conduct suggested that he would be likely to engage in similar conduct if given an opportunity, particularly in light of Michael's continued reference to the 2011 offense as a "vacation."[11] Despite Michael's concerns about Catherine's alleged marijuana use, the court found that substance abuse was "not an issue,"[12] and it found "no evidence of severe mental health issues." Finally, the court found it "pertinent . . . that [the court]

---

[8]      (...continued)
each parent.").

[9]      AS 25.24.150(c)(5) ("[L]ength of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.").

[10]      AS 25.24.150(c)(6) ("[W]illingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.").

[11]      AS 25.24.150(c)(7) ("[A]ny evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents.").

[12]      AS 25.24.150(c)(8) ("[E]vidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child.").

has little to no faith that Michael will comply with either the letter or spirit of any court order."[13]

In light of its best interests analysis the court awarded Catherine sole legal and primary physical custody of John. While the court expressed concern about sending John out of state to visit with Michael, it determined that John would spend the summers with Michael in Oregon and return to Alaska for the school year. The court also ordered that Michael could have additional unsupervised visitation with John when Michael was in Fairbanks, and that he would be responsible for the costs associated with those visits. The superior court found that, because no evidence on child support was presented at trial, its 2012 child support order would stand.

### C. Issues On Appeal

Michael appeals the final custody determination and the superior court's orders regarding child support and visitation costs. He argues that the superior court violated his substantive due process rights and John's procedural due process rights. He also appears to challenge the constitutionality of the custodial interference statute under which he was convicted of a class C felony in 2012. Finally, Michael suggests throughout his brief that the superior court judge was biased against him.

Catherine has not participated in this appeal.

## III. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Awarding Catherine Full Legal And Primary Physical Custody.

Michael alleges several errors on the part of the superior court with regard to the award of full legal and primary physical custody. Specifically, he challenges the

---

[13] AS 25.24.150(c)(9) ("[O]ther factors that the court considers pertinent.").

superior court's factual findings and application of eight of the nine[14] statutory best interests factors.[15]

> **1.    The superior court did not commit clear error in its fact finding under the best interests factors.[16]**

Custody determinations are made according to the best interests of the child under AS 25.24.150(c).

> **a.    AS 25.24.150(c)(1)-(2):  The needs of the child**

The first and second best interests factors concern the needs of the child and each parent's ability to meet those needs.[17]  The superior court found that John has "typical needs" of a child his age with parents going through a divorce.  The court found that "Michael expresses a desire to meet [John's] typical needs," but "he lacks the capability to meet those needs."  In support of that finding the court referenced "the facts

---

[14]    Michael does not challenge the court's finding under AS 25.24.150(c)(4) that love and affection exist between John and each parent.

[15]    "We review the superior court's custody determination for abuse of discretion."  *Wells v. Barile*, 358 P.3d 583, 587 (Alaska 2015).  "An abuse of discretion occurs when the superior court considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."  *Id.* (quoting *Martin v. Martin*, 303 P.3d 421, 424 (Alaska 2013)).  "We will not 'reverse a trial court's resolution of custody issues unless, after a review of the entire record,' we are 'convinced that the trial court abused its discretion or that its controlling factual findings are clearly erroneous.' "  *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008) (quoting *Valentino v. Cote*, 3 P.3d 337, 339 (Alaska 2000)).

[16]    "We review findings of fact in custody cases for clear error."  *Sarah D. v. John  D.*, 352 P.3d 419, 435 n.65 (Alaska 2015) (citing *Red Elk v. McBride*, 344 P.3d 818, 822 (Alaska 2015)).  We "find clear error when, after review of the entire record, 'we are left with a definite and firm conviction' a mistake occurred."  *Id.* (quoting *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010)).

[17]    AS 25.24.150(c)(1)-(2); *see supra* note 5.

found above" in its credibility determination. The finding appears to be based on the court's credibility determination that Michael has consistently acted in a "self-centric manner" and did not hesitate to "us[e] [John] to manipulate th[e] decision making ability of this court." Specifically, the court observed that Michael's decision to remove John from Alaska against court orders in 2011 resulted in John's placement in protective custody and that Michael "manipulate[d] [John] for his own criminal purposes" by telling him not to discuss the matter with police. If Michael consistently puts his own needs ahead of John's, and is willing to manipulate John to promote his own interests, it stands to reason that John's best interests may be neglected in favor of Michael's. The court's finding that self-centered, manipulative behavior renders Michael incapable of meeting John's needs is supported in the record and therefore not clearly erroneous.

### b.     AS 25.24.150(c)(3):  The child's preference

The third best interests factor considers the child's preference.[18]  One of Michael's primary arguments on appeal is that the superior court did not consider John's preference as required by statute. But Michael conflates the court failing to even *consider* that preference with the court giving John's preference no weight because he had been manipulated by Michael. The court did not fail to consider John's preference; rather, the court recognized that John had "expressed various preferences," but ultimately determined there was sufficient evidence of Michael manipulating John to justify giving "little credence" to John's preference.

Regarding Michael's manipulative conduct, the superior court found "as a factual matter, that the reliance of the [investigator] on [John's] expressed preferences is undermined by Michael's efforts" to manipulate that preference. In support of its finding the court pointed to Michael's Facebook correspondence telling John what to

---

[18]     AS 25.24.150(c)(3); *see supra* note 6.

include in a letter to the court, as well as evidence from the 2015 custody report indicating that Michael told John to call 911 if he did not receive money Michael sent him in the mail. The court also noted that even the 2015 custody report ultimately recommending adherence to John's preference characterized that preference as "questionable" and stated that Michael had "actively and inappropriately groomed [John]" in his preference. Because evidence in the record supports a finding that John's preference was the product of Michael's inappropriate influence, we cannot conclude that the court clearly erred in that finding.[19]

Having found that John's preference was influenced, the superior court weighed it accordingly. We have held that a child's preference may be disregarded when unduly influenced even when, as here, the child is a teenager. In *Jenkins v. Handel* the superior court denied custody modification despite a teenager's stated preference because the court found that the preference was "influenced" by an older sibling and the adults seeking modification.[20] We affirmed, concluding that because the finding regarding influence was supported by the record, the court did not abuse its discretion "in giving

---

[19] Michael appears to suggest that the superior court erred by rejecting the custody investigator's recommendation to adhere to John's stated preference. "[C]ustody investigators are simply expert witnesses and . . . their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses." *Matthew P. v. Gail S.*, 354 P.3d 1044, 1049 (Alaska 2015) (second alteration in original) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005)). "Because custody investigators' recommendations are granted no particular deference, trial courts are free to reject those opinions provided that 'the evidence as a whole supports the court's decision.' " *Id.* (quoting *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1159 (Alaska 2008)).

[20] 10 P.3d 586, 591 (Alaska 2000).

greater weight to other important factors."[21]  Similarly, because the superior court's inappropriate influence finding here is not clearly erroneous, the court did not abuse its discretion by attaching no weight to John's stated preference.

Michael relatedly argues that the superior court's refusal to allow John to testify as a witness at trial was an impermissible failure to consider his preference and violated his due process rights.  We first note that nothing in the record supports the notion that John independently wanted to testify, as opposed to Michael wanting John to testify.  John's putative due process rights are not properly before us.  But Michael's argument regarding John's testimony suffers from the same frailties discussed above.

In *Helen S.K. v. Samuel M.K.* we considered whether the use of in camera interviews violated a parent's due process rights by preventing her from knowing evidence used against her at a custody trial.[22]  We held:

> [I]n camera interviews should be used rarely . . . because [they] create[] a risk of infringing the due process rights of the parents.  But . . . there are many valid reasons to avoid allowing the children to become witnesses and questioned in open court, not least of which is the harm the child might suffer upon being forced to participate in a public adversarial proceeding involving his or her own parents.[23]

We observed that "if a judge does not feel well equipped or suited to undertake the task of conducting in camera interviews with children, or prefers not to conduct such interviews, then the judge should seek the assistance of a custody investigator or a fellow

---

[21]   *Id.*

[22]   288 P.3d 463, 473-75 (Alaska 2012).

[23]   *Id.* at 473-74 (footnote omitted).

-13-                                     *1598*

judge."[24]  And that is precisely what the court did in this case:  it did not have John testify in open court, presumably for the reasons discussed in *Helen S.K.*, and apparently preferred not to interview John in camera, instead appointing a custody investigator.[25]

This is not a case where a child's preferences were not solicited or made known to the court, and this is not a case where the court failed to consider the child's preferences.  This is a case where the court found that Michael manipulated John's stated preference and the court ultimately gave that preference no weight.  This is a case where the court found that Michael lacks the capacity to meet John's needs because Michael is willing to manipulate John to serve Michael's needs.  Michael's attempt to rely on John's due process rights here is consistent with that finding.

The superior court therefore did not abuse its discretion by relying on the custody investigator's report instead of permitting John to testify.

### c.    AS 25.24.150(c)(5):  Stability and continuity

The fifth best interests factor requires the trial court to consider how long the child has lived in a stable, satisfactory environment and the benefit of continuity.[26]  Michael relies on the custody investigator's report that referred to his "large, stable family" in Oregon and on Catherine's testimony at trial that she had no problem with the living environment in Oregon.  But the court was not bound by the custody report or testimony at trial, and the court's findings that John has lived with Catherine "essentially

---

[24]    *Id.* at 474.

[25]    The superior court did not explain its reasons for not allowing John to testify in open court or in camera, noting only that John was "not going to testify either in court or in chambers" and that although there was "one published case where a judge in Anchorage did it, . . . no judge in Fairbanks does that."

[26]    AS 25.24.150(c)(5); *see supra* note 8.

his whole li[f]e" and that life in Oregon would "not [be] a substitute for remaining with Catherin[e]" is not clearly erroneous.

### d.     AS 25.24.150(c)(6): Willingness to facilitate a relationship between parent and child

Michael challenges the superior court's finding regarding the sixth best interests factor: that Catherine "unequivocally. . . has the superior willingness and ability to facilitate and encourage a close and continuing relationship between Michael and [John]."[27] The court based its finding on the fact that Michael's "actions . . . demonstrate a palpable antipathy . . . towards Catherine and he is willing[] to inject [John] in the middle" of the parties' disputes. The court's finding is supported by the 2015 custody investigation report and by evidence presented at trial, including emails between Michael and Catherine and text messages between Michael and John in which Michael repeatedly made disparaging comments about Catherine. Because the court's determination that Catherine would be better suited to facilitate a relationship between Michael and John is supported by evidence in the record, we cannot say that it is clearly erroneous.

### e.     AS 25.24.150(c)(7):  History of domestic violence

With respect to the seventh best interests factor,[28] the court found that although Michael had overcome the domestic violence presumption, his "ability and opportunity to commit domestic violence remains elevated"; the court had no such concerns for Catherine. Michael argues that he never committed, nor was he accused of having committed, any *physical* domestic violence against John or Catherine because his

---

[27]     AS 25.24.150(c)(6); *see supra* note 9. The language in the shared custody factor found at AS 25.20.090(6)(E) is identical.

[28]     AS 25.24.150(c)(7); *see supra* note 10. The language in the shared custody factor found at AS 25.20.090(8) is identical.

-15-                                           *1598*

history of domestic violence was based on custodial interference.[29] But he provides no support for such a distinction, and the legislature has determined that under the marital and domestic relations statutes, custodial interference is a form of domestic violence.[30] When the court stated that Michael's "[p]ast performance suggests that [domestic violence] will happen again if he is given the opportunity," the court appears to have meant that Michael would be likely to commit custodial interference again. Based on Michael's history and the court's findings regarding his willingness to disobey court orders and manipulate John, this finding is not clearly erroneous.

Michael also objects to the court's finding that Catherine was unlikely to engage in domestic violence. But the only evidence of Catherine's purportedly violent behavior came from Michael himself. Michael filed a domestic violence petition against Catherine in June 2010, after he claimed she grabbed him by the shirt and pushed him against a wall. A 20-day protective order was issued against Catherine after that incident, but there is no support in the record for Michael's claim that Catherine was forcibly removed from the home by the police. Even assuming Catherine committed an act of domestic violence against Michael, the court did not abuse its discretion by placing more weight on Michael's history than on Catherine's single incident of violence against Michael.

---

[29] Michael also appears to challenge the constitutionality of Alaska's first degree custodial interference statute, AS 11.41.320(a)(1), as applied to his circumstances. But Michael was convicted of custodial interference in 2012 without appealing that conviction, and the time for doing so is long past. Alaska R. App. P. 204(a)(1). Any appeal of his conviction, including a challenge to the constitutionality of the statute under which he was convicted, is therefore untimely.

[30] AS 18.66.990 (defining "domestic violence" as including "a crime against the person under AS 11.41"); AS 11.41.330 (defining crime of custodial interference in the second degree); AS 25.90.010 (adopting definition of domestic violence and "crime involving domestic violence" for purposes of Title 25).

### f.     AS 25.24.150(c)(8):  Substance abuse

With respect to the eighth factor, Michael next contends that the superior court ignored evidence of substance abuse on Catherine's part.  The court found that Catherine had smoked marijuana twice in recent years, but determined that John had not been impacted.  Michael argues that "the court did not fully weigh or consider the use and possible impact on [John]," but he presented no evidence demonstrating that John was adversely impacted by Catherine's occasional marijuana use, and the statutory factor specifically concerns the child's emotional or physical well-being.[31]  Again, the superior court's finding is not clearly erroneous.

### g.     AS 25.24.150(c)(9):  Other pertinent factors[32]

Finally, Michael challenges the court's finding that he is unlikely to comply with any order of the court.  But the court points to specific instances of Michael failing to follow orders, including taking John out of Alaska in 2011 against court orders, failing to report when he returned to Fairbanks as he was required to do under his criminal probation order, possessing a firearm despite his felony conviction, and his willingness to have John live with him in Oregon in 2013 despite contrary court orders.  Because the superior court points to these specific examples, the court did not clearly err in its finding that Michael is unlikely to follow future court orders.

---

[31]     AS 25.24.150(c)(8); *see supra* note 11.

[32]     AS 25.24.150(c)(9); *see supra* note 12.

**2.    The superior court did not abuse its discretion by determining that John's best interests are served by awarding Catherine custody.[33]**

In light of our determination that none of the superior court's best interests findings were clearly erroneous, we cannot say that the court abused its discretion in weighing the factors and concluding that John's interests would be best served by awarding Catherine full legal and primary physical custody.[34]

**B.    The Superior Court Did Not Err By Refusing To Modify Child Support.**

Michael also challenges the superior court's ruling that he continue to pay child support in accordance with the 2012 order. He argues that "the court and attorneys failed to address" child support at trial due to a lack of time. But the trial was a "best interests" trial to determine whether the existing custody order should be modified.

---

[33]    The superior court awarded Catherine full legal and primary physical custody. "Physical and legal custody are two distinct concepts that must be analyzed separately." *Co v. Matson*, 313 P.3d 521, 524 (Alaska 2013) (citing *Collier v. Harris*, 261 P.3d 397, 403 (Alaska 2011)). However, both are analyzed using the best interests factors found in AS 25.24.150(c). *Id.* Because Michael does not make separate arguments regarding physical and legal custody, and because both are analyzed according to the same set of factors, we do not distinguish between arguments for legal custody and those for physical custody.

[34]    Michael briefly argues that the United States Constitution "limits the use of state power to diminish parental rights and undermine the family." He asserts that the United States Supreme Court has held one of the liberties protected by the due process clause of the Fourteenth Amendment includes the right of parents "to raise their children free from unreasonable state interferences [sic]." Michael's brief argument makes no attempt to explain how these cases from the 1920s apply to state child custody laws for domestic relations matters. Michael has not adequately raised a colorable due process claim for us to review. "[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Kingery v. Barrett*, 249 P.3d 275, 285 n.42 (Alaska 2011) (alteration in original) (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991)).

Michael nonetheless argues that the superior court "kn[ew] that it is not feasible or reasonable for [him] to pay" his current obligation, pointing to a letter he submitted to the court from the Social Security Administration indicating that he was disabled as of June 1, 2011. But when the court admitted this exhibit, it stated: "I will admit [it] for the purpose to the extent that [it] says that he has a disability but he's not receiving insurance, I'm not sure where that all fits in, but I will admit that." Custody, not child support, was the issue at the trial; the superior court did not err by maintaining the existing child support order when it maintained the existing custody order. We note, however, that nothing prevents Michael from filing a support modification motion if he believes a reduction in his child support obligation is warranted.

## C. The Superior Court Did Not Err In Its Visitation Costs Ruling.

Alaska Civil Rule 90.3(g) provides: "[T]he court shall allocate reasonable travel expenses which are necessary to exercise visitation between the parties as may be just and proper for them to contribute." Michael challenges the superior court's rulings that the receiving parent shall pay transportation costs whenever John travels between Alaska and Oregon and that Michael will be responsible for visitation costs associated with visits in Fairbanks. In support of his position Michael cites *Ronny M. v. Nanette H.*, in which we determined that the superior court had abused its discretion by requiring a father to pay for all visitation expenses.[35] We held that given the father's low income, requiring him to pay 100% of the visitation expenses would "potentially . . . render[] meaningless" the court's finding that visitation with the father would be in the children's

---

[35]    303 P.3d 392, 406-07 (Alaska 2013).

best interests.[36]  Because we determined that it was neither "reasonable" nor "just and proper" for the father to pay the full expenses, we held that the superior court had abused its discretion.[37]

But here the bulk of John's travel expenses will be shared under the superior court's order.  If John spends the summer with his father and the school year with his mother, each parent will presumably be responsible for approximately half of the travel expenses, as each will pay only when they are the "receiving" parent. Michael provides no reason to consider such an arrangement unjust.  Nor does he provide any argument why it is unfair for him to pay the limited visitation cost when *he* visits Fairbanks.  Given that the bulk of John's travel expenses will be divided approximately evenly between the parties, the court has not abused its discretion.

**D.    The Superior Court Was Not Biased Against Michael.**

Finally, Michael appears to argue that the superior court was biased against him.  Michael's bias claim arises for the first time on appeal, but we have previously reviewed judicial bias claims that were not preserved in the trial court.[38]  In light of Michael's status as a pro se litigant, we have reviewed his claim despite his not having filed a motion for disqualification below.[39]  However, there is no indication that the

---

[36]    *Id.* at 407.

[37]    *Id.*

[38]    *See, e.g.*, *Greenway v. Heathcott*, 294 P.3d 1056, 1063 (Alaska 2013) (assuming without deciding that a bias claim raised for the first time on appeal was properly before us, although "[i]t is not obvious what must be done to preserve for review a claim of judicial bias, if, as here, there has been no motion for recusal, disqualification, or new trial alleging judicial bias").

[39]    *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) (holding that the pleadings of pro se litigants should be held to less stringent standards than those of

(continued...)

superior court was biased against Michael.  "To succeed on a motion to disqualify a judge for bias, the movant must show that the judge's actions 'were the result of personal bias developed from a nonjudicial source.' "[40]  A judge is not to be disqualified "if the judge's 'knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.' "[41]  We have noted that "most cases examining comments made by a judge fail to find the kind of bias or prejudice requiring disqualification."[42]

For instance, in *Hanson v. Hanson* we found a judge's comment that a litigant "really hate[s] women," although "unnecessary to any judicial action he was taking and . . . arguably inappropriate," was "not 'so extreme as to display clear inability to render fair judgment.' "[43]  The tenor and substance of the judge's final order in this case are considerably less negative than the comment made in *Hanson*.  Michael highlights language from the court's final custody order referring to Michael's reasoning as "tortured" and using various adjectives to describe Michael's behavior, including "self-centered," "manipulative," "prevaricat[ing]," and "sickening."  Michael argues that this language demonstrates the court "abused its judicial discretion based on its prejudice

---

**39**     (...continued)
lawyers).  The statements Michael contends constitute judicial bias were not made until the final custody order.  Assuming those statements were the only evidence of alleged bias, Michael could not have filed a motion for disqualification earlier in the case.

**40**     *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting *Nelson v. Jones*, 781 P.2d 964, 972 (Alaska 1989)).

**41**     *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

**42**     *Id.* at 1185.

**43**     *Id.* at 1186 (first alteration in original) (quoting *Liteky*, 510 U.S. at 551).

and dis[d]ain of" Michael, and that the court's disdain led it to disregard the facts of the case.[44]

In *Hanson* we found that there was "considerable evidence in the record of the proceedings to support [a] conclusion that [the judge's] comments were the result of opinions and attitudes formed in court by the evidence that the judge heard."[45] Here the superior court's opinion about Michael's credibility and his willingness to manipulate John for his own gain similarly appears to have been formed as a result of the judge's interactions with Michael throughout the course of this lengthy case. Because there is no evidence that the judge formed an extrajudicial opinion about Michael, we reject his judicial bias claim.

## IV. CONCLUSION

For the reasons discussed above, we AFFIRM the superior court in all respects.

---

[44] Contary to Michael's argument, we reviewed the superior court's relevant factual findings and determined that they are supported by the record.

[45] *Id.*