CARNEY, Justice.
I. INTRODUCTION
A husband appeals the superior court's unequal property division in a divorce proceeding that gave the wife the majority of the marital estate. He argues that the superior court abused its discretion when dividing the property and that the property division was therefore inequitable. Because the property division was neither clearly unjust nor based on clearly erroneous factual findings, we affirm the superior court's decision.
II. FACTS AND PROCEEDINGS
Errol Downs and Deborah Downs were married in 1985. Errol suffered a heart attack in approximately 1988, had heart surgery in 1989, and did not return to work. Errol began collecting Social Security Disability Insurance in 1994. That same year, the parties moved to Alaska following Deborah's retirement from her job with the State of Oregon, eventually buying a house in Petersburg. She then took a job with the State of Alaska. Deborah worked for the State until her retirement in 2009.
*296 The parties separated after Deborah sought a domestic violence protective order against Errol in January 2013. Deborah alleged that she feared for her safety because Errol was behaving strangely and threatening to hurt her. Around the same time that Deborah filed the domestic violence protective order, Errol moved out of the marital home and into a motel room. He lived at the motel until August when he was moved to the Petersburg Medical Center. Doctors diagnosed him with dementia, as well as depression, malnutrition, alcoholism, and other conditions.
Errol filed for divorce in October 2013. Approximately six months later Errol's attorney petitioned the probate court to appoint a guardian for Errol. The petition was granted, and a public guardian was appointed.[1] The following April Errol's leg was amputated above the knee, leaving him unable to walk. As a result of his significant healthcare needs, he moved to an assisted living facility in Anchorage.
In February 2016 Deborah filed a motion to dismiss the divorce complaint on the basis that Errol was not competent to get a divorce. At trial the superior court determined that Errol was competent, denied Deborah's motion to dismiss, and then proceeded to divide the marital estate.
Errol requested approximately 50% of the marital assets. His guardian testified regarding his financial needs and the impact that the property division could have on his eligibility for services, including Medicaid.[2] The guardian testified that he had an irrevocable trust that ensured his continuing eligibility for Medicaid,[3] a separate burial account,[4] a Permanent Fund Dividend account, and a checking account that had a balance of less than $ 2,000 (as required to maintain Medicaid eligibility).[5] At the time of trial Errol resided in a long-term healthcare facility. The cost of the facility was covered in large part by long-term care insurance he received as a beneficiary of Deborah's insurance plan.[6] The remainder of the monthly cost was covered by Medicaid.
Errol's guardian testified that if Errol received his proposed portion of the marital assets, they could be placed in his trust and then used to buy a home for him. She highlighted the importance of maintaining Errol's Medicaid eligibility but did not claim that he could not receive the benefit of his proposed share of the marital assets.
Deborah argued that all of the marital assets except 95% of her monthly Oregon state retirement benefit should be awarded to her. She argued that her Oregon state retirement benefit could pay for Errol's monthly health insurance premiums.[7] Deborah *297 contended that this was equitable because all of Errol's needs were met by Medicaid and his long-term health insurance and because Errol had not identified any additional needs. Further, Deborah noted that at Errol's death assets in his trust would revert to the State of Alaska.[8]
The superior court granted the divorce. In its division of the marital assets, Errol received $ 31,680, which was 40% of the proceeds from the sale of the parties' boat and hand-troll fishing permit. He was also awarded 95% of Deborah's monthly Oregon state retirement benefit, as well as some household items. The court awarded Deborah the rest of the marital estate, including a car, the marital home (which was free of any mortgage and valued at $ 245,000), and her other retirement accounts.
To justify its division the court discussed the relevant statutory factors from AS 25.24.160(a)(4).[9] It found that Deborah was retired, 67 years old, and needed the marital assets to live comfortably for the rest of her life. It also found that, because Errol needed to maintain Medicaid eligibility, his assets were in an irrevocable trust and that any assets in that trust would revert to the State of Alaska upon his death. It specifically found that Errol was unlikely to ever live independently, that all of his needs were met by Medicaid and long-term health insurance, and that he had been unrealistic about his potential future living situation.
Errol now appeals the superior court's unequal property division.
III. STANDARD OF REVIEW
When dividing marital property in a divorce proceeding, the trial court must complete three steps: "(1) determin[e] what property is available for distribution, (2) find[ ] the value of the property, and (3) divid[e] the property equitably."[10]
Errol only appeals the third step: the superior court's division of property, which we review for abuse of discretion[11] and will reverse only if it is "clearly unjust" or "based on a clearly erroneous factual finding or mistake of law."[12] We review factual findings for clear error, reversing "if, upon review of the entire record, we are left with a firm and definite conviction that a mistake has been made."[13]
"An equal division of property is presumptively equitable, but the trial court has broad discretion in this area."[14] "Sometimes ... an unequal division may be required to achieve equity."[15]
"We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[16]
*298 IV. DISCUSSION
"In dividing property, either equally or unequally, trial courts should be guided by the [ AS 25.24.160(a)(4) ] factors."[17] These statutory factors are "not exhaustive, and the trial court need not make findings pertaining to each factor, but its findings must be sufficient to indicate the factual basis for the conclusion reached."[18] "Where the trial court makes these threshold findings, we generally will not reevaluate the merits of the property division."[19] "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[20]
On appeal, Errol argues that the superior court abused its discretion for three primary reasons: (1) the court improperly considered Deborah's and her parents' contributions to the marriage; (2) the court improperly based its division of property upon the fact that Errol would never live independently; and (3) the court was biased against Errol.
A. The Superior Court Properly Considered Deborah's And Her Parents' Contributions To The Marital Estate.
Errol claims that the superior court erred by improperly considering Deborah's and her parents' contributions to the marital estate when dividing the property. He argues that these contributions were marital property and therefore the superior court should have divided them equally. However, Errol mischaracterizes the superior court's decision. The superior court did not distinguish these contributions as separate property that should be returned to Deborah after the divorce;[21] rather, it merely considered the fact that Deborah and her parents made these contributions to the marital estate as a relevant factor when dividing the property. We have previously held that a superior court may consider such contributions as relevant when dividing marital property,[22] and the superior court was within its discretion to consider them here.
B. The Superior Court Did Not Clearly Err In Finding That Errol Could Not Live Independently Or Abuse Its Discretion In Considering That Finding When Dividing The Marital Estate.
Errol contends that the superior court wrongly relied on its finding that he could not live independently when it divided the marital estate. The court based its property division primarily on the fact that Deborah's needs far outweighed Errol's because she was living independently and he would need to remain in assisted living for the rest of his life. It further found that Errol lived comfortably and all of his needs were being met in assisted living. The superior court concluded that in order to maintain his comfortable living situation and continue to have his needs met, Errol needed to remain eligible for Medicaid. Errol's Medicaid eligibility, in turn, required him to maintain his current economic condition.
Errol argues that the superior court abused its discretion in dividing the marital *299 estate because he "is now in the process of leaving protective custody and will live independently." His argument presents two issues: first, that the superior court clearly erred in finding that he would never live independently; and second, that the superior court's property division was an abuse of discretion because it relied on this erroneous fact.
Errol contends that the superior court "did not pay enough attention" to evidence suggesting that Errol could eventually live independently. But this argument ignores the contrary evidence before the superior court: testimony from Errol's guardian and Deborah, as well as neuropsychological reports and doctor recommendations, all of which the superior court found to be more credible than Errol's testimony.
We review factual findings for clear error, reversing only if "we are left with a firm and definite conviction that a mistake has been made."[23] Because it is the trial court, not this court, that judges the credibility of witnesses and weighs conflicting evidence, "[t]he trial court's factual findings enjoy particular deference."[24] The superior court's factual finding that Errol was unable to live independently was supported by the evidence, so "we are [therefore not] left with a firm and definite conviction that a mistake has been made."[25]
Errol next seems to argue that because the superior court erred by concluding that he could not live independently, it also erred by relying on that finding when dividing the marital estate. He argues that because the superior court incorrectly found that he could not live independently, it also incorrectly found that Deborah's needs were greater. He then argues that because these findings were clearly erroneous, the superior court abused its discretion by relying upon them to divide the property unequally. But, as we have discussed, the superior court did not err in finding that Errol could not live independently. The superior court therefore did not err by relying on that finding when it found that Deborah's needs were necessarily greater.
Further, AS 25.24.160(a)(4)(G) specifically instructs trial courts to consider "the circumstances and necessities of each party" when dividing a marital estate. Here, the superior court considered both Errol's and Deborah's needs. It concluded that Errol could not live independently and that his needs were being met in assisted living, that he needed to maintain a certain economic condition to remain eligible for Medicaid and therefore remain in assisted living, and that Deborah would continue to live independently and therefore have greater needs. Based on a consideration of its factual findings regarding the parties' individual needs, the court awarded Deborah a greater portion of the marital estate. Because AS 25.24.160(a)(4)(G) specifically directs the superior court to consider these findings and these findings were not clearly erroneous, the superior court did not abuse its discretion.
C. There Was No Bias Against Errol.
Errol argues that the court's division of assets demonstrates that the judge was biased against him and in favor of Deborah. He argues that: (1) the judge unfairly believed Errol could have returned to work if he drank less; (2) the judge inappropriately considered the domestic violence protective order Deborah obtained against Errol; (3) the judge inappropriately called Errol "delusional"; and (4) the judge inappropriately considered "how wonderful Deborah ha[d] been in the marriage." Errol makes this argument for the first time in his brief; he did not raise the issue of bias at trial.[26]
We have repeatedly held that a party must demonstrate that the court formed an unfavorable opinion of the party from extrajudicial information[27] and that *300 bias cannot "be inferred merely from adverse rulings."[28] But judicial bias may also arise during the course of judicial proceedings if "a judicial officer hears, learns, or does something intrajudicially so prejudicial that further participation would be unfair."[29] Errol does not argue that the judge considered any extrajudicial information, nor does he offer evidence of anything that occurred during the proceedings aside from the judge's adverse rulings. The comments and findings that Errol argues show bias were "the result of opinions and attitudes formed in court by the evidence that the judge heard."[30] We therefore find that the superior court judge was not biased against Errol.
V. CONCLUSION
We AFFIRM the superior court's property division.

Alaska Statutes 13.26.700 -.750 authorize the appointment of a public guardian who "has the same powers and duties with respect to the public guardian's wards and protected persons as a private guardian or conservator." AS 13.26.720(a) ; see AS 13.26.316 (general powers and duties of guardian). Before appointing a public guardian, the court must determine that "the person is unable to manage [his or her own] property and affairs effectively for reasons such as mental illness, mental deficiency, [or] physical illness or disability" and that "the person has property that will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person." AS 13.26.401(2)(A)-(B). A public guardian is appointed when no suitable private guardian or conservator is available. AS 13.26.710(b).

Medicaid is a health insurance program for low-income, disabled, and other eligible individuals. See AS 47.07.010 ; AS 47.07.020 ; 7 Alaska Administrative Code (AAC) 100.002(b) (2018). Medicaid eligibility is, in part, based on income and assets. See 7 AAC 100.002(b) ; 7 AAC 40.270 ; 7 AAC 40.310.

This is a "pooled trust" authorized by 7 AAC 100.614. With the trust Errol can retain assets, and though he cannot access the trust himself, any amount can be spent on his behalf without disqualifying him from Medicaid. See 7 AAC 100.606. There is no cap on the amount in the irrevocable trust account.

Certain exempt resources are not counted when determining Medicaid eligibility. 7 AAC 40.280. Money designated for funeral costs is exempt. 7 AAC 40.280(a)(7).

See 7 AAC 40.270(a)(1).

Deborah's insurance paid approximately $ 8,000 per month toward the cost of Errol's care at the facility.

Deborah's retirement benefit from Oregon would cover the monthly cost for Errol to purchase general health insurance under Deborah's plan for the immediate future.

The balance of Errol's irrevocable asset trust will revert to the State of Alaska upon his death to reimburse the State for any Medicaid payments it made on Errol's behalf: "A recognized Medicaid trust document must provide that upon termination of the trust by death of the recipient, any money remaining in the trust must be paid to the state, up to the amount the state paid in Medicaid benefits for the recipient while the trust existed." 7 AAC 100.608(b).

These factors include: (1) "the length of the marriage"; (2) the parties' ages and health; (3) the parties' earning capacities; (4) the parties' financial condition, including cost and access to health insurance; (5) the parties' conduct and "whether there has been unreasonable depletion of marital assets"; (6) "the desirability of awarding the family home ... to the party who has primary physical custody of children"; (7) "the circumstances and necessities of each party"; (8) the time and manner in which the parties acquired the property; and (9) the value and income-producing capacity of the property.

Dunmore v. Dunmore , 420 P.3d 1187, 1190 (Alaska 2018) (quoting Wagner v. Wagner , 386 P.3d 1249, 1251 (Alaska 2017) ); see also Jones v. Jones , 942 P.2d 1133, 1136 (Alaska 1997).

Dunmore , 420 P.3d at 1190 (quoting Wagner , 386 P.3d at 1251 ).

Fletcher v. Fletcher , 433 P.3d 1148, 1152 (Alaska 2018) (quoting Dunmore , 420 P.3d at 1190 ).

Dunmore , 420 P.3d at 1190 (quoting Fortson v. Fortson , 131 P.3d 451, 456 (Alaska 2006) ).

Brennan v. Brennan , 425 P.3d 99, 106 (Alaska 2018) (footnote omitted).

Jones , 942 P.2d at 1137.

Mengisteab v. Oates , 425 P.3d 80,85 (Alaska 2018) (quoting Wells v. Barile , 358 P.3d 583, 588 (Alaska 2015) ).

Jones , 942 P.2d at 1137.

Nicholson v. Wolfe , 974 P.2d 417, 422 (Alaska 1999) (footnote omitted).

Cartee v. Cartee , 239 P.3d 707, 713 (Alaska 2010) ; see also Jerry B. v. Sally B. , 377 P.3d 916, 938 (Alaska 2016) ("[T]he superior court has significant discretion 'to ascribe different weights to [the AS 25.24.160(a)(4) ] factors upon hearing the evidence at trial.' " (quoting Cartee , 239 P.3d at 715 ) (second alteration in original)).

Limeres v. Limeres , 320 P.3d 291, 296 (Alaska 2014) (quoting Sheffield v. Sheffield , 265 P.3d 332, 335 (Alaska 2011) ).

See Lewis v. Lewis , 785 P.2d 550, 558 (Alaska 1990) ("[A]ll property acquired during the marriage is available for distribution, excepting only inherited property and property acquired with separate property[,] which is kept as separate property.").

See Fortson v. Fortson , 131 P.3d 451, 459 (Alaska 2006) ("We have held that contributions of separate property may be relevant to equitable division."); Green v. Green , 29 P.3d 854, 860 (Alaska 2001) ("We have recognized that premarital contributions to the marital estate may be relevant to the equitable division, even though this is not a factor specifically listed in AS 25.24.160(a)(4)." (footnote omitted)).

Dunmore v. Dunmore , 420 P.3d 1187, 1190 (Alaska 2018) (quoting Fortson , 131 P.3d at 456 ).

Limeres , 320 P.3d at 296 (quoting Sheffield , 265 P.3d at 335 ).

Dunmore , 420 P.3d at 1190.

See Greenway v. Heathcott , 294 P.3d 1056, 1063 (Alaska 2013) (assuming without deciding that bias raised for the first time on appeal was properly before the court).

See Berry v. Berry , 277 P.3d 771, 774 (Alaska 2012) (" 'In order to prove a claim of judicial bias,' a party must show that the judge 'formed an opinion of him from extrajudicial sources.' " (quoting Peterson v. Ek , 93 P.3d 458, 467 (Alaska 2004) )).

Kinnan v. Sitka Counseling , 349 P.3d 153, 160 (Alaska 2015) (quoting Khalsa v. Chose , 261 P.3d 367, 376 (Alaska 2011) ).

Brown v. State , 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part) (citing Jerry B. v. Sally B. , 377 P.3d 916, 925 (Alaska 2016) ; Grace L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 329 P.3d 980, 988-89 (Alaska 2014) ; R.J.M. v. State, Dep't of Health & Soc. Servs. , 946 P.2d 855, 869-70 (Alaska 1997)superseded by statute on other grounds , ch. 99 §§ 1, 18, SLA 1998); see also Greenway , 294 P.3d at 1064 (suggesting that something "in the court's 'demeanor, tone, or words' " could "indicate[ ] actual bias or give[ ] an appearance of bias").

Hanson v. Hanson , 36 P.3d 1181, 1186 (Alaska 2001).