NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| IMRE MANYOKY, | ) | |
| | ) | Supreme Court No. S-19238 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-23-09062 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| YEKATERINA LUTONIN, f/k/a | ) | AND JUDGMENT |
| Yekaterina Manyoky, | ) | |
| | ) | No. 2148 – May 20, 2026 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Imre Manyoky, pro se, Anchorage, Appellant. Joe P. Josephson, Anchorage, Law Office of Joe P. Josephson, for Appellee.

Before: Borghesan, Henderson, Pate, and Oravec, Justices. [Carney, Chief Justice, not participating.]

I.     INTRODUCTION

During divorce proceedings, the superior court granted custody of a couple's children to the mother with visitation to the father. The court also distributed the marital estate slightly in favor of the father. On appeal, the father broadly challenges both the custody and property awards. He also alleges procedural errors and bias by the court. Observing no errors in the superior court's rulings, we affirm.

## II. FACTS AND PROCEEDINGS

Yekaterina Lutonin and Imre Manyoky married in 2008. They have two children — one born in 2015 and the other in 2018. Lutonin, represented by legal counsel, filed for divorce in 2023, seeking primary physical custody. Manyoky, representing himself, sought sole decision-making authority and shared physical custody.

Manyoky requested various forms of relief during the course of litigation, including a psychological evaluation of Lutonin, review of the judge's conduct, and court assistance in obtaining police and hospital records. The superior court denied relief in all instances. Also, over Manyoky's objection, the court allowed the children to temporarily travel out of state with Lutonin.

Trial was held over the course of two days in July and August 2024, during which both parties testified and presented evidence. At the end of trial, the superior court promptly issued a divorce decree and findings of fact and conclusions of law. Citing concerns about Manyoky's inability to prioritize and meet the children's needs, the court awarded sole legal custody and primary physical custody of both children to Lutonin and visitation to Manyoky. It also determined that it was fair and equitable to divide the marital estate slightly in Manyoky's favor.

Manyoky appeals.

## III. STANDARD OF REVIEW

The superior court holds "broad discretion" to decide child custody.[1] "A trial court's determination of custody will be set aside only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion."[2]

---

[1] *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005).

[2] *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

We review the court's identification and valuation of property for clear error when they "involve factual findings 'as to the parties' intent, actions, and contributions to the marital estate' and the 'valuation of property.' "[3] However, the equitable division of property is reviewed for abuse of discretion.[4]

"We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[5] We also "review constitutional questions de novo, and will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

## IV. DISCUSSION

Manyoky broadly challenges the superior court's decisions and conduct. We evaluate his challenges by grouping them into four categories: (1) custody, (2) property, (3) judicial bias, and (4) allegations of procedural error and other harms. Because none of Manyoky's challenges are persuasive, we affirm all of the superior court's rulings.

### A. The Superior Court Did Not Clearly Err Or Abuse Its Discretion By Awarding Sole Legal And Primary Physical Custody To Lutonin.

Manyoky argues that the superior court erred by awarding sole legal custody and primary physical custody to Lutonin. As explained below, we observe no clear error in the court's factual findings or abuse of discretion in how the court weighed the best interest factors to determine custody.[7]

---

[3] *Wagner v. Wagner*, 386 P.3d 1249, 1251 (Alaska 2017) (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[4] *Dunmore v. Dunmore*, 420 P.3d 1187, 1190 (Alaska 2018) (quoting *Wagner*, 386 P.3d at 1251).

[5] *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Wells v. Barile*, 358 P.3d 583, 588 (Alaska 2015)) (internal quotation marks omitted).

[6] *Jerry B. v. Sally B.*, 377 P.3d 916, 924-25 (Alaska 2016) (quoting *Garibay v. State, Dep't of Admin., Div. of Motor Vehicles*, 341 P.3d 446, 448 (Alaska 2014)).

[7] AS 25.24.150(c) (listing nine factors to evaluate child's best interests).

## 1. The superior court's factual findings are not clearly erroneous.

Manyoky challenges nearly all of the superior court's best interest findings, but each one is supported by the record.[8] Assessing the children's needs,[9] the court determined that "[t]he children are normal children with needs typical of children their age"; although it acknowledged that one child has a potential musculoskeletal condition and both have developmental delays, the court found overall that the children were "doing well." This finding is supported by Lutonin's testimony that both children generally have normal needs, but have below average standardized test scores for their grade level — potentially due to their high number of school absences while in Manyoky's care. She also testified that while the older child has some musculoskeletal issues that are being treated, the younger child does not have any health conditions.

Considering the parents' desire and ability to care for the children,[10] the superior court found that although both parents love their children, Lutonin was better suited to meet their needs. The court expressed concern that Manyoky "hyper-focuse[s]" on conflicts with his medical providers and "struggle[s] to maintain focus on the children's best interests, substituting his own tangential feelings of persecution." These findings are supported by Manyoky's extensive testimony about conflicts with his medical provider and his failure to testify about relevant topics — including the children's interests and his preferences for custody and property distribution — despite prompting by the court. The court additionally found that Manyoky "expresses . . . beliefs that appear grandiose and paranoid." Although he challenges this

---

[8] Manyoky also alleges that his testimony was altered in the transcripts and that the court's audio recordings had been edited. Our independent review shows there is no evidence to support these claims.

[9] AS 25.24.150(c)(1) (directing court to consider "the physical, emotional, mental, religious, and social needs of the child").

[10] AS 25.24.150(c)(2) (directing court to consider "the capability and desire of each parent to meet these needs").

finding, Manyoky's testimony and submissions to the court support it. For example, he testified that he suspected Lutonin may be a spy and asserted his belief that she was inhabited by "two polarized personas . . . at war."

Also related to the parents' ability to meet the children's needs, the superior court found that Manyoky "struggles to maintain his residence." This finding is supported by Lutonin's testimony that Manyoky kept his residence in a general state of disarray and continuously introduced animals into the residence without properly caring for them.

The court did not address the children's preferences in its findings.[11] But this was appropriate because it is reasonable to conclude that the children were too young to form a meaningful preference.[12] The court also acknowledged that the children "are bonded with both parents."[13] Considering the interest in continuity, it additionally recognized that Manyoky had operated as the children's primary caregiver prior to the proceedings.[14]

However, the superior court expressed concern that Manyoky's behavior, including his regular disparagement of Lutonin, could "adversely impact[]" the children. The court found that Manyoky "is not able to promote a relationship between

---

[11] AS 25.24.150(c)(3) (directing court to consider "the child's preference if the child is of sufficient age and capacity to form a preference").

[12] *Valentino v. Cote*, 3 P.3d 337, 341 (Alaska 2000) (expressing that "a young child's preferences are often unreliable because he or she can be easily influenced by the behavior of his or her parents"). At the time the custody order was issued, both children were below the age of ten.

[13] AS 25.24.150(c)(4) (directing court to consider "the love and affection existing between the child and each parent").

[14] AS 25.24.150(c)(5) (directing court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

[Lutonin] and the children and . . . draws them into his divorce proceedings."[15] Although Manyoky challenges these findings, he admitted to telling the children that "their mother is lying." Further, he brought the children to a court hearing and attempted to persuade the court to allow them to be present during proceedings. Lutonin testified that Manyoky told the children that she did not love them, called her "evil" in front of them, and inappropriately discussed the divorce proceedings with them. Relatedly, the court found that Manyoky believes Lutonin should "submit to his authority," and that he "is struggling to adapt to the end of his marriage and to [Lutonin] exercising decision-making authority in her life and in the children's lives." These findings are supported by Manyoky's own description of the parties' relationship.

The superior court acknowledged it had heard testimony from Lutonin about potential domestic violence, but without further evidence, did not find that any acts of domestic violence had been committed.[16]

The court also found that Manyoky "use[s] substantial amounts of marijuana" and that "[t]here is some evidence that [his] paranoia increased when he began smoking marijuana frequently."[17] This finding is supported by Manyoky's extensive testimony about how he self-medicates with marijuana to ease his pain. Lutonin also described how Manyoky would leave the children unattended for long periods of time to smoke and left vape pens around the house. Further, Lutonin

---

[15] AS 25.24.150(c)(6) (directing court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

[16] AS 25.24.150(c)(7) (directing court to consider "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents").

[17] AS 25.24.150(c)(8) (directing court to consider "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child").

specifically stated that she believed Manyoky's paranoia worsened with his marijuana use.

Having reviewed the full record, we are not left with a "definite and firm conviction" that the superior court erred when making its factual findings.[18] And where Manyoky and Lutonin presented conflicting testimonies, we defer to the "court's credibility determinations, particularly when they are based on oral testimony."[19] We therefore hold that the superior court did not clearly err in its findings of fact.

**2.    The superior court did not abuse its discretion by awarding Lutonin custody.**

Manyoky claims that the superior court erred by awarding Lutonin sole legal and primary physical custody. We disagree. Although the court did not expressly name the best interest factors laid out in AS 25.24.150(c), it is clear from the factual findings discussed above that the court considered and weighed each one. Absent any indication that the court considered improper factors when awarding custody, we must assess whether the court weighed any factors in a disproportionate manner.[20]

Based on our review of the superior court's findings, continuity was the only factor that potentially weighed in favor of Manyoky, due to his role as the children's primary caregiver. Four factors — the children's needs, children's preferences, parent-child bond, and evidence of domestic violence — were neutral. Three factors — the parents' ability and willingness to meet the children's needs, parents' ability and willingness to foster a positive relationship between the children

---

[18]    *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Stephanie W. v. Maxwell V.*, 274 P.3d 1185, 1189 (Alaska 2012)).

[19]    *Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 930 (Alaska 2012).

[20]    It is an abuse of discretion for the court to consider improper factors, fail to consider statutorily mandated factors, or assign disproportionate weight to certain factors while ignoring others. *See Matthew P. v. Gail S.*, 354 P.3d 1044, 1047 (Alaska 2015).

and the other parent, and evidence of substance abuse — weighed in favor of Lutonin. Because the court's findings on the relevant best interest factors heavily favored Lutonin,[21] we observe no abuse of discretion in its decision to award her sole legal and primary physical custody.

## B. The Superior Court Did Not Clearly Err Or Abuse Its Discretion In Dividing the Marital Estate.

Manyoky argues the superior court's valuation of property and division of the marital estate was flawed. "When dividing marital property in divorce proceedings, the trial court must complete three steps: '(1) determin[e] what property is available for distribution, (2) find[] the value of the property, and (3) divid[e] the property equitably.' "[22] With regard to its underlying factual findings, we hold that the court did not clearly err in its determination and valuation of property. We also hold that it did not abuse its discretion in its division of the estate.

In his briefing on appeal, Manyoky offers up values for various items of marital property and critiques the values found by the superior court. But in the superior court proceedings, Manyoky did not testify to any valuations and did not object to the valuations provided by Lutonin. He also does not point to any evidence in the record that contradicts Lutonin's testimony or the exhibits she submitted. Reviewing the full record, we are not left with a "firm and definite conviction" that the court erred in its identification and valuation of the marital property.[23]

---

[21]     We note that the best interests determination is not a matter of simply comparing the number of factors that weigh in favor of either parent; rather, a court "has considerable discretion in determining the importance of each statutory factor in the context of a specific case and is not required to weigh the factors equally." *Georgette S.B. v. Scott B.*, 433 P.3d 1165, 1171 (Alaska 2018) (quoting *Judd v. Burns*, 397 P.3d 331, 339-40 (Alaska 2017)).

[22]     *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019) (alterations in original) (quoting *Dunmore v. Dunmore*, 420 P.3d 1187, 1190 (Alaska 2018)).

[23]     *Dunmore*, 420 P.3d at 1190 (quoting *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006)).

We next turn to Manyoky's argument that the court did "not appropriately consider the wealth discrepancy" when dividing the marital estate. He points out that while Lutonin worked full time as a physician's assistant, he was without formal, full-time employment for several years. In describing the parties' financial disparity, Manyoky states that Lutonin "currently has a thriving, high-income career which [he] supported" while he "invested his time and energy into raising his children and developing self-employment opportunities which [Lutonin] had played a part in foiling." He also alleges that chronic health problems and the cost of the divorce proceedings place him at a further financial disadvantage.

However, the superior court's distribution of property is not "based on a . . . mistake of law" or "clearly unjust" in a way that suggests an abuse of discretion.[24] The court considered and acknowledged the wealth disparity between the parties and awarded a slightly higher amount to Manyoky as a result.[25] The court also cited that wealth disparity in support of its decision to deny credit to Lutonin for expenses related to maintaining the marital properties while divorce proceedings were pending. Moreover, the record supports the court's finding that at the time of the divorce proceedings, Manyoky was "voluntarily and unreasonably unemployed" and that he was "capable of earning $27.50 per hour." These findings support the conclusion that the court's division of marital property was fair and equitable. Therefore, we hold that the superior court did not clearly err or abuse its discretion when dividing the marital estate.

## C. Manyoky Has Not Demonstrated Judicial Bias.

Manyoky alleges that the judge's demeanor and actions indicated "a concerted bias" against him and "a distinct favorability" towards Lutonin. In making

---

[24] *Wagner v. Wagner*, 386 P.3d 1249, 1251 (Alaska 2017) (citing *Jones v. Jones*, 942 P.2d 1133, 1136 (Alaska 1997)).

[25] The net value of the couple's debts and property was $656,254. Lutonin received a net value of $322,218 and Manyoky received a net value of $334,036.

this argument, Manyoky points to perceived bias in the final distribution of assets, the judge's refusal to order Lutonin to provide him financial assistance during the trial, and concerns with some of the assertions the judge made in her orders.

However, rulings against a party, even if incorrect, are not evidence of judicial bias.[26] Rather than revealing bias, here the record shows that the judge was kind and patient with Manyoky. Further, the judge followed the proper procedure by having her denial of Manyoky's bias claims reviewed by another judge, and that review concluded no bias existed.[27]

In short, we reject Manyoky's claim of judicial bias because it lacks any support in the record.[28]

### D. The Superior Court Did Not Otherwise Err.

Manyoky raises additional challenges to the superior court's rulings and handling of the proceedings, including several constitutional claims. None of his arguments are persuasive.

Manyoky alleges that the superior court improperly denied his requests to compel the police department and his medical provider to submit records to the court. Manyoky made these requests as part of his efforts to convince the court to conduct an investigation. But as the court explained to Manyoky, his request exceeded the court's authority; the court cannot conduct investigations on behalf of parties. If the court were

---

[26]     *Snider v. Snider*, 357 P.3d 1180, 1187 (Alaska 2015).

[27]     AS 22.20.020(c) ("If a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts or, if none, by the other members of the supreme court.").

[28]     We also reject Manyoky's argument that the superior court erred by denying his motion for additional review for judicial bias. This motion was properly denied because it was effectively a late-filed request for reconsideration. Alaska R. Civ. P. 77(k) ("A motion to reconsider the ruling must be made within ten days after the date of notice of the ruling as defined in Civil Rule 58.1(c) unless good cause is shown why a later filing should be accepted.").

to do so, it would abandon its role as the impartial arbiter in litigation.[29] Therefore, the court did not abuse its discretion by denying this request.

Manyoky also claims that the superior court "failed to provide the appropriate level of leniency and instruction" to him as a self-represented litigant, specifically faulting the court for not facilitating his requests for financial support. Contrary to Manyoky's claim, the record reflects that the superior court took great care to make the legal process accessible to him, offering detailed explanations of the law and its requirements. Indeed, when Manyoky sought an order requiring Lutonin to pay him a temporary "stipend" for living expenses during the proceedings, the court informed him that he would need to formally request the assistance through a motion. Further, the court directed Manyoky to online resources to help him better understand the law and legal process. We therefore hold that the court provided the procedural guidance to which Manyoky was entitled as a self-represented litigant.[30]

Manyoky also alleges that the superior court did not provide him adequate time to testify and repeatedly "silenced" him despite his requests for additional time. The court has discretion to tailor the timing of trial proceedings to match the complexity of the case before it.[31] And our independent review of the record reflects that the court

---

[29] *See Bauman v. State, Div. of Fam. & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) (explaining that court's assistance to self-represented litigants must be limited so as not to "compromise the court's impartiality" and result in court "act[ing] as an advocate for one side").

[30] *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987); *see also Shooshanian v. Dire*, 237 P.3d 618, 624 (Alaska 2010) ("When a pro se litigant is 'obviously attempting to accomplish' an action, the trial court should inform the litigant of the proper procedure for that action." (quoting *Breck*, 745 P.2d at 75)). *But see Bauman*, 768 P.2d at 1099 (holding courts not required to "to instruct a pro se litigant as to each step in litigating a claim").

[31] Alaska R. Evid. 611(a) (providing that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence").

permitted both parties ample time to present their case. The court extended the trial to two days when it determined that the parties had additional pertinent information to share. In addition to repeatedly warning Manyoky that he was running out of time and encouraging him to cover his most important points, the court also allowed him to exceed his allocated time. Under these circumstances, we hold that the court did not abuse its discretion by declining to give Manyoky additional time to testify.

Next, Manyoky argues that the superior court erred by not giving him additional time to review financial documents that were admitted into evidence. But the court did not abuse its discretion because it actually facilitated Manyoky's access to the documents and confirmed that he had reviewed the documents prior to admission. Further, Manyoky did not raise any objections to admission of the documents when prompted by the court.

Manyoky additionally argues that the superior court erred by denying his request for a psychological evaluation of Lutonin. The court denied Manyoky's request because he had failed to make a showing of "good cause" and had not "alleged facts tending to show that plaintiff's mental condition is in controversy."[32] The court's ruling was proper because Manyoky did not provide any legitimate reason as to why the evaluation was necessary; instead, he offered anecdotes about Lutonin driving recklessly to support his claim that she had a darker, destructive side that she revealed to few people. Without any showing that good cause existed or that Lutonin's mental condition was in controversy, we hold that the court properly denied the request for a psychological evaluation.

Manyoky argues that the superior court failed to properly consider an agreement that he and Lutonin had allegedly made prior to the divorce proceedings.

---

[32] Alaska R. Civ. P. 35(a) (granting court authority to order psychological evaluation of party only if party's "mental . . . condition . . . is in controversy" and "good cause" has been shown).

The court warned Manyoky that it would not hear testimony about previous settlement negotiations. This ruling is in accordance with the Alaska Rules of Evidence, which state that "[e]vidence of conduct or statements made in compromise negotiations is . . . not admissible."[33] Thus, we hold that the court did not abuse its discretion by declining to hear testimony about the alleged separation agreement.

Finally, Manyoky makes several claims on appeal that are waived due to inadequate briefing. He argues the court erred by issuing several orders in August and September of 2024, but he fails to provide a coherent explanation as to the nature of the error. He additionally argues that the court violated his constitutional right to freedom of speech, civil rights, and rights to life, liberty, and the pursuit of happiness. But Manyoky failed to provide any legal or evidentiary support for these claims in his briefing on appeal. Using our independent judgment, we determine that Manyoky has waived these claims due to inadequate briefing.[34]

## V.   CONCLUSION

We AFFIRM the decision of the superior court.

---

[33]   Alaska R. Evid. 408.

[34]   "The adequacy of [a party's] briefing presents a question of law that we determine independently." *Bluel v. State*, 153 P.3d 982, 986 n.5 (Alaska 2007). Where a point is mentioned "only in passing" or "given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991). Notably, "even when a pro se litigant is involved, an argument is considered waived when the party cites no authority and fails to provide a legal theory for his or her argument." *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004) (internal quotation marks omitted).