NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARY TERESA ARTHUR, n/k/a Mary Teresa Wills, | ) ) ) | Supreme Court No. S-17937 |
| Appellant, | ) ) | Superior Court No. 1JU-18-01049 CI |
| v. | ) ) ) | MEMORANDUM OPINION AND JUDGMENT[*] |
| DOMINIC WILLIAM ARTHUR, | ) ) | No. 1919 – September 7, 2022 |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Amy Mead, Judge.

Appearances: Anthony M. Sholty, Faulkner Banfield, P.C., Juneau, for Appellant. Kara A. Nyquist, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

The superior court divided marital assets in a divorce case. One party contends that the court erred in its analysis of relevant statutory factors, abused its discretion in the asset division, and made insufficient findings for meaningful appellate review. We remand two issues for further proceedings; we affirm the remainder of the court's decision.

---

[*]    Entered under Alaska Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

Teresa[1] and Dominic Arthur married in California in 2007 and moved to Juneau in 2011. Dominic filed for divorce in December 2018, and a two-day divorce trial was held in February and March 2020. One issue at trial, and the sole issue in this appeal, was division of the marital estate.

### A. Work Histories

Teresa testified that prior to the marriage she had worked for about ten years as a technology company executive and earned up to $325,000 per year. She stated that in 2004 she began working as a real estate agent but that she switched from full to part-time work to care for Dominic's niece and nephew, who had moved in with them. She said that in 2009 she stopped working and began attending school. She explained that after earning a bachelor's degree in business administration in 2016 she had unsuccessfully applied for various positions. Teresa testified that in May 2017 she took an independent contractor job moderating an online chat room discussing the stock market and providing input to the company with which she contracts. She stated that her 2019 gross revenue was $40,775 and that in five years she "would expect to be somewhere around $60,000." She further explained that she receives no employment benefits but that she can purchase health insurance for about $800 monthly through a federal program.

Dominic testified that he had been employed with the Army National Guard since 1997, with several breaks in service. He said that he worked for the Transportation Security Administration from 2011 to 2018 before taking a position at the Federal Aviation Administration (FAA). Teresa testified that Dominic had told her that he would be taking a temporary pay cut for a year of training with the FAA but that the FAA

---

[1] We use the parties' preferred names.

position "topped out" at a higher pay of about $155,000. Evidence at trial showed that Dominic's gross income was over $90,000 per year from 2015 to 2018 and decreased to about $69,000 in 2019. Dominic explained that his National Guard service might be terminated due to issues with his weight and that he might not be able to serve the 20 full years required to receive Army retirement benefits.

## B. Finances And Property Contributions

Teresa testified that she purchased a California home in 1994 — 13 years before her marriage to Dominic — and that his name was never added to the home's title. Both parties testified that in 2007 Dominic began living with Teresa in the home. Both parties testified that Dominic frequently was away for work but sent his earnings to Teresa. Teresa testified that she believed she did not use Dominic's income to pay the mortgage in 2007 through 2009 and that she relied on a loan from her brother, a line of credit, and her income. She said that in 2009 she stopped making mortgage payments.

Trial testimony reflected that in 2011 the couple moved to Juneau, where they purchased a home solely in Dominic's name because of concerns over Teresa's poor credit; in addition to not paying the California mortgage, she had defaulted on credit card debt. Testimony also reflected that Teresa rented out the California home and that the rental income was used to make the Juneau home's payments. Teresa testified that following a 2011 car accident she received a $180,700 personal injury settlement and that those funds went into a joint bank account. Teresa also testified that in 2014 she sold her California property and the net proceeds of just over $307,000 went into a joint bank account.

The court heard testimony that Dominic had debts but little in the way of assets when the couple married. But the court also heard that Dominic's GI Bill benefits, which included tuition and a $2,000 monthly housing stipend, paid for Teresa's education and that his income supported the couple after Teresa stopped working.

## C.    Health Conditions

Teresa, 54 years old at the time of trial, testified to having mental health issues including anxiety, depression, chronic insomnia, hypervigilance, and PTSD. She explained that she sees a therapist weekly, and she described how her conditions keep her from feeling comfortable in public spaces. She also testified to physical issues, including a thyroid condition and severe knee problems limiting her mobility. She explained that she takes medications for her mental and physical conditions but that they do not affect her current job because she works from home.

Dominic, 50 years old at the time of trial, testified to having physical and mental health issues, including obesity and PTSD. He explained that he needed to reduce his weight to meet standards for remaining in the Army and qualifying for full retirement benefits.

## D.    Superior Court Decision

After identifying and valuing marital property, the superior court made findings on the *Merrill* factors[2] codified at AS 25.24.160(a)(4).[3] The court

---

[2]     *See Merrill v. Merrill*, 368 P.2d 546, 547 n.4 (Alaska 1962) (noting principal factors for consideration in division of property "are the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any").

[3]     The statute provides that when a court divides marital property between the parties in a divorce:

> [T]he division of property must fairly allocate the economic effect of divorce by being based on consideration of the following factors:
>
> (A) the length of the marriage and station in life

(continued...)

found that several factors favored Teresa receiving a larger share of the marital estate: earning capacity because Dominic was "poised to be earning more than" her; financial condition because her employment provided no health insurance; and circumstances and necessities of each party because through his federal employment he had numerous benefits that she did not have, including "annual leave, sick leave, long- and short-term

---

[3]  (...continued)
of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division . . . .

disability, life insurance, vision, and dental coverage, worker[s'] compensation, and a pension plan." The court found that the remaining *Merrill* factors were neutral, including the age and health of the parties and the time and manner of acquisition of property. The court additionally "[took] into account the fact that [Teresa] . . . had the benefit of living in the [Juneau] home for a year and a half after the separation while [Dominic] incurred rental expenses."

Based on these findings the court allocated the $457,081 marital estate 51% to Teresa and 49% to Dominic. Teresa appeals, arguing that the court: (1) erred by "failing to find that Teresa's contribution of her separate property to the marital estate was a factor that weighed in her favor"; (2) erred by "finding that there was no significant disparity in the parties' overall health"; (3) erred in its "analysis of the parties' respective earning capacities"; (4) abused its discretion in dividing the property; and (5) made insufficient findings for meaningful appellate review.

## III. STANDARD OF REVIEW

"There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[4] We review an equitable division of property for abuse of discretion.[5] "A property division is an abuse of discretion if it is clearly unjust; it will also be set aside if it is based on a clearly erroneous factual finding or mistake of law."[6] Clear error exists "if, upon review of the entire record, we

---

[4] *Fletcher v. Fletcher*, 433 P.3d 1148, 1152 (Alaska 2018) (quoting *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015)).

[5] *Engstrom*, 350 P.3d at 769.

[6] *Fletcher*, 433 P.3d at 1152 (quoting *Dunmore v. Dunmore*, 420 P.3d 1187, 1190 (Alaska 2018)).

are left with a firm and definite conviction that a mistake has been made."[7]

The *Merrill* factors "are not exhaustive, and the court is not required to enter findings on each factor; the court's findings . . . need only be sufficient to indicate the basis of the court's conclusion."[8] "Whether there are sufficient findings for informed appellate review is a question of law" we review de novo.[9]

## IV.  DISCUSSION

"In determining the most equitable division, the 'starting point is the presumption that an equal division is the most just.' "[10]  After considering the *Merrill* factors, the superior court may decide that unequally dividing the estate is most just.[11] In this case the court made findings pertaining to each *Merrill* factor; it then concluded that awarding the estate 51% to Teresa and 49% to Dominic was an equitable property division "particularly based on the disparity in the parties' financial situations."

Teresa challenges the superior court's findings regarding three *Merrill* factors:  the time and manner of acquisition of property, the earning capacity of the parties, and  the age and health of the parties.  She also challenges the adequacy of the court's findings.  Although we see no errors in the court's discussion of the parties' age and health,[12] we resolve her other challenges below.

---

[7]     *Dunmore*, 420 P.3d at 1190 (quoting *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006)).

[8]     *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017).

[9]     *Hooper v. Hooper*, 188 P.3d 681, 685 (Alaska 2008).

[10]    *Fletcher*, 433 P.3d at 1154 (quoting *Hooper*, 188 P.3d at 685).

[11]    *Id.*

[12]    The court found that Teresa and Dominic "are close in age and there is no

(continued...)

## A.     Acquisition Of Property

The superior court found that "[b]oth parties contributed to the acquisition of the marital property" and that the time and manner of acquisition of property factor favored neither party. Teresa contends the superior court erred by finding this factor was neutral because she contributed "substantial separate property to the marriage" and Dominic contributed no separate property.

Teresa points to the contribution of the rental income from the California home prior to its sale, to the proceeds from its sale, and to her personal injury settlement.[13] Dominic responds that the court found Teresa's separate property had been transmuted into marital property and that "once transmutation occurs, an asset is converted 'entirely from separate to marital.' "[14] He further notes that the court had discretion to find "both parties' contributions as a whole were equal, including both their premarital and marital contributions."

Teresa cites *Laing v. Laing* for support.[15] In *Laing* we emphasized that the *Merrill* factors are not exhaustive and that superior courts are free to consider other

---

[12]     (...continued)
significant disparity in their relative overall health." The record supports the similarity in their ages, and the finding that "[b]oth parties suffer from health conditions" is supported by their testimony. Neither presented additional medical evidence. Although Teresa listed more ailments, she conceded they did not affect her current employment; Dominic contended his ailments impacted his employment.

[13]     Teresa cites *Abood v. Abood*, 119 P.3d 980, 985 (Alaska 2005), to support her contention that personal injury compensation for non-economic loss is separate property. "But even property that the owner intended to remain separate may be marital if it is inextricably commingled with marital property." *Id.* at 987.

[14]     *Beals v. Beals*, 303 P.3d 453, 460 (Alaska 2013) (quoting *Miller v. Miller*, 105 P.3d 1136, 1141 (Alaska 2005)).

[15]     741 P.2d 649 (Alaska 1987).

relevant factors, including one party's "contribution of substantial separate property to the marriage."[16] We held in *Laing* that the court did not abuse its discretion by dividing the marital estate unequally as a credit for contributing property owned prior to the marriage.[17]

Dominic cites *Fortson v. Fortson* as supporting his argument.[18] In *Fortson* one party argued that the superior court had failed to grant sufficient weight to separate, premarital funds used to repay a marital loan and purchase a marital property.[19] We noted "that contributions of separate property may be relevant to equitable division[;] . . . we have not held that failure to make an adjustment for such contributions constitutes an abuse of discretion."[20]

The superior court recognized Teresa's separate property contributed to the marital estate, noting that she "contributed her [premarital] assets and property to the marriage, including her [California] home and the rental income derived from it." The

---

[16] *Id.* at 654. Teresa contends the superior court should have considered her separate property contributions in its time and manner of acquisition of property analysis. But *Laing* suggests separate property contribution is a factor in addition to those in *Merrill* and AS 25.24.160(a)(4). *See Laing*, 741 P.2d at 654. Whether separate property contributions in this case are considered as part of the time and manner of acquisition of property factor or as a separate factor makes little difference.

[17] *Laing*, 741 P.2d at 654; *see also Downs v. Downs*, 440 P.3d 294, 298 (Alaska 2019) (concluding superior court acted within its discretion by considering separate property contributions when dividing marital property).

[18] 131 P.3d 451 (Alaska 2006).

[19] *Id.* at 458.

[20] *Id.* at 459. We noted only that no prior decision had reached such a conclusion; we did not say that there could be no set of facts in which it would be an abuse of discretion for the court to fail to make such an adjustment.

court weighed this against Dominic's contributions, noting that Dominic had "fewer assets and more debt" coming into the marriage but that he "was the primary source of the couple's income throughout the marriage." In the time and manner of acquisition of property analysis the court found both parties had contributed to the acquisition of the marital property.

Teresa contends that the superior court erred by comparing efforts during the marriage with separate property contributions to the marital estate because "[t]he former is a normal and expected part of being married, while the latter is not." She further contends that the superior court erred by failing to expressly consider how the contribution of her personal injury settlement affected the property distribution. The court recognized that Teresa's $180,700 personal injury settlement was deposited into the parties' joint bank account and found that the rental income and sale proceeds of the California home were a premarital asset she contributed. But, aside from finding that the income from the California house had been transmuted to marital property, the court did not discuss the effect on the property division of either the settlement or the contribution of premarital assets.

Teresa's arguments carry weight. It appears from the record that Teresa contributed perhaps over $500,000 of separate property,[21] while Dominic brought some $55,000 to $60,000 of separate debt ultimately paid by marital assets. Although Dominic was the primary marital income earner after 2009, Teresa stayed home to care for Dominic's niece and nephew. The superior court seems to have ignored Teresa's marital contribution of caring for the children and concluded that, because Dominic provided the marital income after 2009, Teresa's contribution of separate property essentially

---

[21]     In rough numbers the California house rental income was $3,000 monthly, Teresa's personal injury settlement was $180,700, and the California house sale revenue was $307,000.

equalized the parties' financial contributions to the marital estate. This would be incorrect.[22]

Declining to adjust the equitable division of property based on separate contributions is not necessarily an abuse of discretion.[23] But because the superior court did not explain how the parties' contributions weighed in its equitable division, the court's decision does not contain findings adequate for appellate review.

## B. Each Party's Earning Capacity

The superior court found "[b]oth parties' future earning potential is disputed and uncertain," but that Dominic was "poised to be earning more" than Teresa and that the earning capacity of the parties weighed in favor of Teresa receiving a greater percentage of the marital estate.

Teresa contends that, even though weighing the factor in her favor, the court erroneously overstated her potential future earnings and thus undervalued the difference between the parties' earning capacities. Teresa contends that the superior court clearly erred by finding that in 2020 she could earn $60,000. At trial Teresa was asked to predict how much money she might be earning in five years. She testified: "If I were growing at roughly the same rate, then I would expect to be somewhere around $60,000." This speculative estimate was the only testimony or evidence regarding Teresa's future earnings. Based on this the superior court found: "[Teresa] estimates that she could earn up to $60,000 this year if her pay increases at the rate it has the last

---

[22]     *See* AS 25.24.160(a)(4)(C) (requiring that in allocating economic effect of divorce courts consider "length of absence from the job market[] and custodial responsibilities for children during the marriage"); *Cartee v. Cartee*, 239 P.3d 707, 714 (Alaska 2010) (crediting spouse who bore child-rearing responsibility with marital contribution allowing other spouse's career development).

[23]     *See Fortson*, 131 P.3d at 459.

few years — which she expects it to do." Dominic responds by noting the court's findings about Teresa's "extensive history of much higher earning potential" and her opportunities to find employment utilizing her business administration degree. But no evidence supports the finding that Teresa could earn that amount "this year," and it was therefore clearly erroneous.

The superior court heard evidence that Teresa had, well in the past, earned up to $325,000 per year in California in the technology field. She had since changed careers, left the job market to care for children, and earned a business administration degree. The court heard testimony that in Juneau Teresa did not expect to again work in technology or real estate as she previously had, but it noted that Teresa had not addressed employment utilizing her degree. The court also noted Dominic's assertion that Teresa was voluntarily underemployed. But the court did not find that Teresa was voluntarily underemployed.

The superior court found Teresa's "future earnings seem highly speculative" as a contract employee and Dominic was in a position to have higher earnings. This is not clearly erroneous. But we cannot tell whether the court's error in describing Teresa's current income had an appreciable effect on how much the court weighed the earning capacity factor in the marital division. The court should clarify this on remand.

## C.    Property Division

The superior court's property division must be supported by findings of fact explicit and detailed enough to permit us to clearly understand the basis of its decision.[24]

Teresa asserts that it "remains unclear under the facts of this case how the

---

[24]    *Stanhope v. Stanhope*, 306 P.3d 1282, 1287 (Alaska 2013); *Olmstead v. Ziegler*, 42 P.3d 1102, 1107 (Alaska 2002).

court reached its conclusion that a 51/49 division was most equitable." Dominic responds that in light of the marital estate's minimal assets, the property division "was well within the trial court's discretion." Given the court's valuation of the marital estate at $457,081, Teresa received only about $4,571 more than if the estate had been divided equally.

Teresa relies on our *Day v. Williams* decision that a superior court's property division was not supported by sufficient findings to permit meaningful appellate review.[25] Factors in *Day*, including the difference in income between the parties and the availability of health insurance, seemed to weigh in favor of an uneven distribution, yet the court made no findings about how these factors affected the distribution of marital property before equally dividing the property.[26]

Dominic relies on our *Downs v. Downs* decision that once a superior court makes findings guided by the *Merrill* factors, "we generally will not reevaluate the merits of the property division."[27] In *Downs* we affirmed the court's discretion to consider one party's separate contributions when the court unequally divided the marital estate in that party's favor.[28]

Although in this case the superior court explained that awarding Teresa a larger percentage of the estate was justified, it did not explain why, given the relative disparity in the parties' financial positions and Teresa's significant contribution of separate property to the marital estate, a 51/49 division giving Teresa only about $4,571

---

[25]    285 P.3d 256, 263 (Alaska 2012).

[26]    *Id.* at 261-63.

[27]    440 P.3d 294, 298 (Alaska 2019) (quoting *Cartee v. Cartee*, 239 P.3d 707, 713 (Alaska 2010)).

[28]    *Id.*

more than an equal division was equitable.  Similar to *Day*,[29] we cannot determine how this decision was reached based on the court's conclusory statement that a 51/49 distribution is equitable "particularly based on the disparity in the parties' financial situations."  We therefore remand for further explanation.[30]

## V.    CONCLUSION

We REMAND to the superior court for further proceedings on the property division.  We do not retain jurisdiction.

---

[29]    285 P.3d at 263 ("[W]e cannot determine how the court reached its decision. . . . [A] conclusory statement that 'a 50/50 distribution of the marital estate is fair given all of the circumstances' does not provide sufficient information to permit meaningful review.").

[30]    The court may take updated financial information into account and may, considering the issues raised, revisit the property division.  *See, e.g.*, *Heustess v. Kelley-Heustess*, 158 P.3d 827, 833, 836 (Alaska 2007) (remanding for court to reconsider unequal division of assets and noting "court is authorized to conduct supplemental evidentiary proceedings on remand if the court in its discretion finds such proceedings to be desirable").